**STATE of Minnesota, Respondent,**

v.

**Juan Alexander COLEMAN, Appellant.**

No. C0–02–797.

Court of Appeals of Minnesota.

May 20, 2003.

Mike Hatch, Attorney General, St. Paul, MN; and Manual Cervantes, St. Paul City Attorney, Kyle A. Lundgren, Assistant City Attorney, St. Paul, MN, for respondent.

John M. Stuart, State Public Defender, Shannon M. Heim, Rachael T. Krueger, Special Assistant State Public Defenders, Dorsey & Whitney LP, Minneapolis, MN, for appellant.

Considered and decided by
ANDERSON, Presiding Judge,
SCHUMACHER, Judge, and WILLIS, Judge.

## OPINION

ROBERT H. SCHUMACHER, Judge.

Appellant Juan Alexander Coleman challenges his conviction of first-degree driving while impaired, arguing that Minn.Stat. § 169A.03, subd. 21(3) (2000), does not permit use of the 1994 revocation of his driving privileges as an aggravating factor and that use of a 1999 revocation, of which he did not seek judicial review, violated his due-process rights. We affirm.

## FACTS

Coleman was stopped for speeding in July 2001. The state trooper who stopped Coleman noticed that he smelled of alcohol and his speech was slurred. An Intoxilyzer test showed that Coleman's alcohol concentration was .19%.

Before the July 2001 stop, Coleman's driving privileges had twice been revoked under Minnesota's implied-consent statute. In January 1994, Coleman's driving privileges were revoked when he refused to submit to an alcohol-content test. In June 1999, Coleman was again stopped, this time submitting to a test, which showed an alcohol concentration of more than .10%. In connection with the June 1999 incident, Coleman's driving privileges were revoked in September 1999. The criminal charges related to both the January 1994 and June 1999 incidents were dismissed.

After the July 2001 stop, Coleman was convicted of first-degree driving while impaired under Minn.Stat. § 169A.25 (2000). This appeal follows.

## ISSUES

1. Under Minn.Stat. § 169A.03, subd. 21(3) (2000), may a pre–1998 prior impaired-driving-related loss of license be used as an aggravating factor?

2. If a driver does not seek judicial review of a revocation of driving privileges, does subsequent use of the revocation as an aggravating factor under Minn.Stat. § 169A.03, subd. 21(3), violate the driver's due-process rights?

## ANALYSIS

Statutory construction is a question of law, which this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 393 (Minn. 1998). In a constitutional challenge, the interpretation of a statute is a question of law subject to de novo review. *In re Blilie,* 494 N.W.2d 877, 881 (Minn.1993).

1. Coleman argues that Minn.Stat. § 169A.03, subd. 21(3) (2000), does not permit the use of the 1994 revocation of his driving privileges as an aggravating factor. Under Minn.Stat. § 169A.25 (2000),

> a person who violates section 169A.20 (driving while impaired) is guilty of first-degree driving while impaired if two or more aggravating factors were present when the violation was committed.

Minn.Stat. § 169A.03, subd. 3(1) (2000), provides that "aggravating factor" includes "a qualified prior impaired driving incident within the ten years immediately preceding the current offense." A "qualified prior impaired driving incident" includes "prior impaired driving-related losses of license," *id.,* subd. 22, which are defined as, inter alia, revocations of driving privileges

under "Minnesota Statutes 1998, section 169.121 (driver under influence of alcohol or controlled substance) * * * or 169.123 (chemical tests for intoxication) * * *," *id.*, subd. 21(3).

■■■ As a preliminary matter, we address respondent's argument that Coleman's challenge of the use of the 1994 revocation is not properly before this court because Coleman failed to raise the issue in the district court. This court will generally not consider matters not raised in the district court. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988).

> An exception arises if the issue is dispositive of the entire controversy, and there is no advantage or disadvantage to the parties in not having a prior decision by the trial court.

*Freundschuh v. Freundschuh*, 559 N.W.2d 706, 709 (Minn.App.1997). Here, the parties stipulated in the district court that Coleman "challenges the use of the prior implied consent revocations as an enhancement to the DWI charges." Although Coleman argued in the district court only that due process barred use of the prior revocations of his driving privileges, nothing in the record suggests that respondent is disadvantaged. And the correct reading of subdivision 21(3) is clearly dispositive of the entire controversy. We therefore examine Coleman's arguments regarding the interpretation of subdivision 21(3).

■■■ The objective of statutory interpretation is to ascertain and effectuate the legislature's intent. Minn.Stat. § 645.16 (2002). If the statutory language is unambiguous, an appellate court relies on its plain meaning, which manifests legislative intent. *In Re Estate of Nordlund*, 602 N.W.2d 910, 913 (Minn.App.1999), *review denied* (Minn. Feb. 15, 2000). "A statute is ambiguous if it is reasonably susceptible to more than one interpretation." *State by*

*Beaulieu v. RSJ, Inc.*, 552 N.W.2d 695, 701 (Minn.1996).

■■■ Coleman argues that subdivision 21(3) is unambiguous and that the statute's plain language provides that only a revocation under the 1998 statute, and not a revocation under previous versions, may be considered as an aggravating factor. We disagree. Although subdivision 21(3) refers to the 1998 statute, subdivision 3(1), in defining "aggravating factor," provides a ten-year look-back period. Further, subdivision 21(4) also includes in the definition of "prior impaired driving-related loss of license" any revocation of snowmobile, all-terrain-vehicle, or boat-operating privileges "that occurred on or after August 1, 1994." We conclude, therefore, that the language of subdivision 21 is ambiguous.

Because we conclude that the statute is ambiguous, we look to the following statutory presumptions to determine the legislature's intent:

> (1) the legislature does not intend a result that is absurd, impossible of execution, or unreasonable;
>
> (2) the legislature intends the entire statute to be effective and certain;
>
> (3) the legislature does not intend to violate the constitution of the United States or of this state;
>
> (4) when a court of last resort has construed the language of a law, the legislature in subsequent laws on the same subject matter intends the same construction to be placed upon such language; and
>
> (5) the legislature intends to favor the public interest as against any private interest.

Minn.Stat. § 645.17 (2002).

Coleman's suggested interpretation yields an absurd and unreasonable result. Under Coleman's reading of subdivision

21(3), only revocations occurring under the 1998 statute could be used as aggravating factors. Because subdivision 21 goes back to 1994 for any revocation of snowmobile, all-terrain-vehicle, or boat-operating privileges, Coleman's suggested interpretation would treat these revocations more severely than any revocation of driving privileges that occurred before 1998. Given the strong public policy in favor of preventing drunk driving, *see State, Dep't of Pub. Safety v. Juncewski*, 308 N.W.2d 316, 319 (Minn.1981), it is unlikely that the legislature intended such a result.

Coleman argues that the reference in subdivision 21(3) to "Minnesota Statutes 1998" is rendered superfluous if a revocation under a prior statute is considered as an aggravating factor. "Every law shall be construed, if possible, to give effect to all its provisions." Minn.Stat. § 645.16. But "Minnesota Statutes 1998" is only a statutory reference, not a substantive provision. Coleman's reading of subdivision 21 renders superfluous the entire ten-year look-back period described in subdivision 3(1). If the legislature intended for all of section 169A to be effective and certain as Minn.Stat. § 645.17(2) requires this court to presume, it could not have intended the reference to "Minnesota Statutes 1998" as a limitation of the ten-year look-back period in subdivision 3(1).

 Coleman also contends that the rule of lenity demands interpretation of subdivision 21(3) in his favor. "Penal statutes are to be strictly construed with all reasonable doubts concerning legislative intent to be resolved in favor of the defendant." *State v. Wagner*, 555 N.W.2d 752, 754 (Minn.App.1996). But the court is not required to give a statute the narrowest possible interpretation. *Id.* And we presume that "[t]he legislature intends to favor the public interest as against any private interest." Minn.Stat. § 645.17(5).

Interpreting subdivision 21 to allow the use of a pre–1998 revocation as an aggravating factor favors the public interest over any private interest. *Cf. Juncewski*, 308 N.W.2d at 319 (holding that drunk-driving laws are remedial statutes and are to be "liberally interpreted in favor of the public interest and against the private interests of the drivers involved").

Finally, Coleman argues he had no notice that his 1994 revocation could be used as an aggravating factor for a subsequent drunk-driving offense. He contends that prior to 1998, a revocation of driving privileges could not be used as an aggravating factor for a drunk-driving offense. But beginning in 1993, Minnesota law provided that a person was guilty of a gross misdemeanor if, inter alia, the person was driving under the influence "within five years of a prior license revocation, or within ten years of the first of two or more prior license revocations." 1992 Minn. Laws ch. 570, art. 1, § 7; *see also id.*, § 32 (providing effective date of January 1, 1993, for provision allowing consideration of prior revocation of driving privileges). When Coleman's driving privileges were revoked in 1994, therefore, Minnesota law provided that the revocation could be considered as an aggravating factor for any subsequent drunk-driving offense with which Coleman might be charged.

 2. Coleman next argues that the use of the 1999 revocation of his driving privileges as an aggravating factor violated his due-process rights because the 1999 revocation was not subject to "meaningful judicial review." The United States Supreme Court has stated that

where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding. This principle means at the

very least that where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively the element of a criminal offense.

*United States v. Mendoza–Lopez,* 481 U.S. 828, 837–38, 107 S.Ct. 2148, 2155, 95 L.Ed.2d 772 (1987) (citations omitted).

■ Revocation of driving privileges under Minnesota's implied-consent statute is subject to both administrative review, Minn.Stat. 169A.53, subd. 1 (2002), and judicial review, *id.,* subd. 2 (2002). The two proceedings are separate and unrelated. *Rancour v. Comm'r of Pub. Safety,* 355 N.W.2d 462, 464 (Minn.App.1984).

■ Coleman sought administrative review of his 1999 revocation, but he did not seek judicial review. He argues that he failed to seek judicial review because the result of the administrative review was unknown until after the deadline for seeking judicial review had passed. Coleman acknowledges the separate and unrelated nature of the proceedings, but he fails to reconcile his argument that waiting for the result of the administrative review somehow precluded him from seeking judicial review. Further, the availability of judicial review, though unexercised by Coleman, satisfies the Mendoza–Lopez requirement that "an alternative means of obtaining judicial review must be *made available.*" 481 U.S. at 838, 107 S.Ct. at 2155 (emphasis added); *cf. Kleven v. Comm'r of Pub. Safety,* 399 N.W.2d 153, 156 (Minn.App.1987) (holding that due process does not require further judicial review of administrative review and that there was no due-process violation when appellant had opportunity to seek judicial review of revocation under implied-consent statute but instead sought only administrative review).

Because Coleman had the opportunity for meaningful judicial review of the 1999 revocation of his driving privileges, use of the revocation as an aggravating factor did not violate his due-process rights.

### DECISION

Under Minn.Stat. § 169A.03, subd. 21(3) (2000), the 1994 revocation of Coleman's driving privileges could be used as an aggravating factor. Use as an aggravating factor of the 1999 revocation, which could have been but was not subjected to judicial review, did not violate Coleman's due-process rights.

**Affirmed.**