**STATE of Minnesota, Respondent,**

v.

**Robert S. ZEIMET, Appellant.**

No. A03–273.

Supreme Court of Minnesota.

May 26, 2005.

John Stuart, State Public Defender, James R. Peterson, Assistant Public Defender, Minneapolis, MN, for Appellant.

Mike Hatch, Attorney General, Susan Gaertner, Ramsey County Attorney, Mark Nathan Lystig, Assistant County Attorney, St. Paul, MN, for Respondent.

## OPINION

ANDERSON, RUSSELL A., Justice.

This is a sentencing appeal. Appellant Robert S. Ziemet disputes the computation of his criminal history score in sentencing for first-degree driving while impaired. Concluding that the computation of the criminal history score was inconsistent with Minnesota Sentencing Guidelines goals and policies, we reduce the sentence to 66 months, the presumptive sentence available under the guidelines when properly computed, and affirm as modified.

On August 6, 2002, appellant Robert S. Zeimet (Zeimet) was arrested and ultimately charged with two counts of first-degree driving while impaired, in violation of Minn.Stat. § 169A.20, subd. 1(1) (2004) (driving when under the influence of alcohol) and Minn.Stat. § 169A.20, subd. 1(5) (2004) (driving while having an alcohol concentration of .10 or more), felony-level offenses when the driving violation is committed "within ten years of the first of three or more qualified prior impaired driving incidents." Minn.Stat. § 169A.24 (2004). Qualified prior impaired driving incidents include both criminal impaired driving convictions and civil impaired driving-related losses of license. Minn.Stat. § 169A.03, subd. 22 (2004). The probable cause portion of the complaint in this case identified six qualified prior impaired driving incidents within ten years of the August 6 violation, two civil and four crimi-

nal.[1] Zeimet entered a guilty plea to the second count of the complaint in exchange for the dismissal of the first count and a guidelines sentence.

The Ramsey County Corrections Department conducted a presentence investigation and prepared a sentencing worksheet recommending a presumptive sentence of 72 months based on a criminal history score of six, using the most recent three impaired driving incidents which were criminal convictions to enhance the offense to a felony and the remaining civil and criminal impaired driving incidents in the computation of the criminal history score. The worksheet also noted the statutorily mandated five-year conditional release period.

By memorandum filed on December 2, 2002, Zeimet challenged the inclusion of the civil incidents in the computation of the criminal history score, asserting that his criminal history score, as properly calculated, was five. On December 12, 2002, county corrections submitted an amended sentencing worksheet, using the two civil impaired driving incidents and one criminal impaired driving incident to enhance the offense to a felony level and the remaining three criminal incidents in the computation of the criminal history score,

arriving at the same score of six and presumptive sentence of 72 months.[2] Following a hearing, the district court sentenced Zeimet to 72 months in prison along with the statutorily-mandated five-year conditional release period.

Zeimet appealed, challenging the computation of the criminal history score. The court of appeals affirmed, holding that under the guidelines and governing statutes, a prosecutor may elect to use qualified prior civil impaired driving incidents for enhancement purposes and preserve qualified prior criminal impaired driving incidents for use in the criminal history score computation. *State v. Zeimet,* 673 N.W.2d 191 (Minn.App.2004). We granted further review.

 Whether a statute or a provision of the sentencing guidelines has been properly construed is a question of law to be reviewed de novo. *State v. Murphy,* 545 N.W.2d 909, 914 (Minn.1996) (applying de novo review to terroristic threats statute); *State v. Garcia,* 302 N.W.2d 643, 646–47 (Minn.1981) (applying de novo review to district court's interpretation of sentencing guidelines). The object of statutory interpretation is to determine and effectuate legislative intent. *In re Welfare*

1. Zeimet's qualified prior impaired driving incidents consisted of the following: (1) October 18, 1995, Implied Consent–Test, Revocation (Civil); (2) April 18, 1996, Implied Consent–Test, Revocation (Civil); (3) January 22, 1998, Gross Misdemeanor Test Refusal Conviction (Criminal); (4) November 9, 1998, Implied Consent–Test, Conviction (Criminal); (5) January 9, 2001, Gross Misdemeanor DWI Conviction (Criminal); and (6) September 10, 2002, Gross Misdemeanor DWI Conviction (Criminal).

2. The amended sentencing worksheet computed Zeimet's criminal history score as six, consisting of four felony points, one misdemeanor/gross misdemeanor point and one custody status point. Under the guidelines,

four misdemeanor/gross misdemeanor "units" constitute a criminal history point, and ordinarily only one misdemeanor/gross misdemeanor point is permitted in computing a defendant's criminal history score. Minnesota Sentencing Guidelines II.B.3. But when the current conviction is for first-degree driving while impaired, prior driving while impaired violations are assigned two units each and there is no limit on the total number of misdemeanor/gross misdemeanor points included in the criminal history score. *Id.* If only one of Zeimet's prior gross misdemeanors were included in the computation, his criminal history score would be five and his presumptive sentence would be 66 months. Minnesota Sentencing Guidelines IV.

*of C.R.M.,* 611 N.W.2d 802, 805 (Minn. 2000). The ambit of an ambiguous criminal law should be construed narrowly according to the rule of lenity. *State v. Lubitz,* 472 N.W.2d 131, 133 (Minn.1991) (applying rule of lenity to ambiguous minimum sentencing provision).

In 2001, the legislature amended the impaired driving crimes statutes to include a felony-level offense. Act of June 30, 2001, ch. 8, art. 11, § 3, 2001 Minn. Laws, 1st Spec. Sess.1943, 2112 (codified at Minn. Stat. § 169A.24 (2004)). The provision applied to offenses committed on or after August 1, 2002, but violations occurring before that date may be considered as qualified prior impaired driving incidents. *Id.,* § 17, 2001 Minn. Laws, 1st Spec. Sess. at 2120.

As previously indicated, the first-degree impaired driving statute makes a driving-while-impaired offense a felony when the person commits the current "violation within ten years of the first of three or more qualified prior impaired driving incidents." Minn.Stat. § 169A.24, subd. 1(1).[3] Qualified prior impaired driving incidents include both "prior impaired driving convictions" and "prior impaired driving-related losses of license." Minn.Stat. § 169A.03, subd. 22. The term "prior impaired driving conviction" includes criminal convictions for alcohol-related driving offenses. Minn.Stat. § 169A.03, subd. 20. The term "prior impaired driving-related loss of license" includes alcohol-related driver's license suspensions, revocations, cancellations, denials and disqualifications. Minn.Stat. § 169A.03, subd. 21 (2004).[4]

**3.** Minnesota Statutes § 169A.24 provides:

Subdivision 1. A person who violates section 169A.20 (driving while impaired) is guilty of first-degree driving while impaired if the person:

(1) commits the violation within ten years of the first of three or more qualified prior impaired driving incidents; or

(2) has previously been convicted of a felony under this section.

Subd. 2. A person who commits first-degree driving while impaired is guilty of a felony and may be sentenced to imprisonment for not more than seven years, or to payment of a fine of not more than $14,000, or both. The person is subject to the mandatory penalties described in section 169A.276 (mandatory penalties; felony violations).

**4.** Minnesota Statutes § 169A.03, subdivision 21 provides:

Prior impaired driving-related loss of license. (a) "Prior impaired driving-related loss of license" includes a driver's license suspension, revocation, cancellation, denial, or disqualification under:

(1) section 169A.31 (alcohol-related school bus or Head Start bus driving); 169A.50 to 169A.53 (implied consent law); 169A.54 (impaired driving convictions and adjudications; administrative penalties); 171.04 (persons not eligible for drivers' licenses); 171.14 (cancellation); 171.16 (court may recommend suspension); 171.165 (commercial driver's license, disqualification); 171.17 (revocation); or 171.18 (suspension); because of an alcohol-related incident;

(2) section 609.21 (criminal vehicular homicide and injury, substance-related offenses), subdivision 1, clauses (2) to (6); subdivision 2, clauses (2) to (6); subdivision 2a, clauses (2) to (6); subdivision 2b, clauses (2) to (6); subdivision 3, clauses (2) to (6); or subdivision 4, clauses (2) to (6);

(3) Minnesota Statutes 1998, section 169.121 (driver under influence of alcohol or controlled substance); 169.1211 (alcohol-related driving by commercial vehicle drivers); or 169.123 (chemical tests for intoxication); or

(4) an ordinance from this state, or a statute or ordinance from another state, in conformity with any provision listed in clause (1), (2), or (3).

(b) "Prior impaired driving-related loss of license" also includes the revocation of snowmobile or all-terrain vehicle operating privileges under section 84.911 (chemical testing), or motorboat operating privileges under section 86B.335 (testing for alcohol and controlled substances), for violations that occurred on or after August 1, 1994; the revocation of snowmobile or all-terrain

When a person has both a qualified prior impaired driving conviction and a qualified prior impaired driving-related loss of license based on the same course of conduct, either the conviction or the loss of license may be considered a qualified prior impaired driving incident, but not both. Minn.Stat. § 169A.09 (2004).

Under the sentencing guidelines, civil prior impaired driving-related losses of license may not be considered in the computation of the criminal history score. Minnesota Sentencing Guidelines II.B. (describing the criminal history index axis of sentencing guidelines grid as comprised of criminal records, custody status at time of offense, and prior juvenile record for young adult felons). Prior nonfelony criminal convictions upon which a current offense is enhanced to a felony cannot be used in computing the criminal history score, except for use in determining custody status. Minnesota Sentencing Guidelines II.B.6.[5] In the context of first-degree driving while impaired, the qualified prior impaired driving incidents used to enhance the current offense to a felony, or "predicate offenses," should be excluded from the computation of the criminal history

score. Minnesota Sentencing Guidelines cmt. II.B.601.[6] The guidelines indicate that when not used for enhancement of a current offense to a felony, prior driving-while-impaired convictions are to be used in computing the misdemeanor/gross misdemeanor points. Minnesota Sentencing Guidelines cmts. II.B.301, II.B.302.

█ Zeimet argues that the felony driving-while-impaired statute and the sentencing guidelines provisions create an ambiguity in the computation of the components of an offender's criminal history score. He asserts that the phrase "three or more" qualified prior impaired driving incidents in Minn.Stat. § 169A.24, subd. 1(1) is susceptible to more than one interpretation, suggesting that the phrase could be read as permitting the use of only three qualified prior incidents for enhancement or as including all prior qualified incidents for enhancement. He suggests that by application of the rule of lenity, all qualified prior impaired driving incidents should be deemed enhancement offenses and therefore excluded in the computation of the criminal history score. In the alternative, Zeimet suggests that prior impaired driving convictions first be counted

vehicle operating privileges under section 84.91 (operation of snowmobiles and all-terrain vehicles by persons under the influence of alcohol or controlled substances); or the revocation of motorboat operating privileges under section 86B.331 (operation while using alcohol or drugs or with a physical or mental disability.

(c) "Prior impaired driving-related loss of license" does not include any license action stemming solely from a violation of section 169A.33 (underage drinking and driving), 171.09 (conditions of a restricted license), or 340A.503 (persons under the age of 21, illegal acts).

5. Minnesota Sentencing Guidelines II.B.6 provides:

When determining the criminal history score for a current offense that is a felony solely because the offender has previous

convictions for similar or related misdemeanor and gross misdemeanor offenses, the prior gross misdemeanor conviction(s) upon which the enhancement is based may be used in determining custody status, but the prior misdemeanor and gross misdemeanor convictions(s) cannot be used in calculating the remaining components of the offender's criminal history score.

6. Minnesota Sentencing Guidelines cmt. II.B.601 provides that a "first-time first degree (felony) driving while impaired (DWI) offense involves a DWI violation within ten years of the first of three or more prior impaired driving incidents. Because the DWI priors elevated this offense to the felony level, they should be excluded from the criminal history score." (Parentheses in original.)

for felony enhancement purposes. The state counters that there was no error in the allocation of the prior impaired driving incidents for enhancement purposes and that the rulings below should be affirmed.[7]

■ To answer Zeimet's argument that no prior convictions arising from qualified prior impaired driving incidents should be used in the computation of a felony driving-while-impaired defendant's criminal history score, the statutory phrase "three or more qualified prior impaired driving incidents" essentially refers to those whose impaired driving behavior will subject them to felony liability. As a corollary, the statute does not operate as authority for prosecutorial allocation of qualified prior impaired driving incidents for sentencing purposes. "The power to fix the limits of punishment for criminal acts lies with the legislature. However, the imposition of a sentence in a particular case within those limits is a judicial function." *State v. Misquadace*, 644 N.W.2d 65, 68 (Minn. 2002) (internal citations omitted).

■ In Minnesota we have a commission-based sentencing guidelines system, the goals of which are "to assure public safety, promote uniformity and proportionality in sentencing, provide greater honesty or 'truth in sentencing,' and coordinate sentencing practices with correctional resources." *Taylor v. State*, 670 N.W.2d 584, 586 (Minn.2003) (citations omitted). The Minnesota Sentencing Guidelines, section I, states:

> The purpose of the sentencing guidelines is to establish rational and consistent sentencing standards which reduce sentencing disparity and ensure that sanctions following conviction of a felony are proportional to the severity of the offense of conviction and the extent of the offender's criminal history. Equity in sentencing requires (a) that convicted felons similar with respect to relevant sentencing criteria ought to receive similar sanctions, and (b) that convicted felons substantially different from a typical case with respect to relevant criteria ought to receive different sanctions.

*See also* Minn.Stat. § 244.09, subd. 5 (2004). Accordingly, it is up to the Minnesota Sentencing Guidelines Commission to determine how an offender's prior record will be used in assessing the number of criminal history points and, in that regard, the use for criminal point computation of prior alcohol-related driving incidents beyond the minimum number of alcohol-related incidents already used to enhance the current driving offense to a felony-level offense.

Furthermore, the sentencing guidelines were created to assure equity in sentencing. Minn.Stat. § 244.09, subd. 5(2). In achieving this goal, substantial efforts have been made to avoid systematic manipulation. *See, e.g.,* Minnesota Sentencing Guidelines cmt. II.B.102 (explaining that the commission decided to limit criminal history points for multiple convictions arising out of a single course of conduct that can result in multiple sentences in order to limit the impact of variability in charging and sentencing practices and to "prevent systematic manipulation."). This court has

7. The state points out that in *State v. Coleman*, 661 N.W.2d 296, 300 (Minn.App.2003), *rev. denied* (Minn. Aug. 5, 2003), the court of appeals rejected application of the rule of lenity to a claim that a prior impaired driving-related loss of license could not be used as an "aggravating factor." In *Coleman*, the court of appeals held that the use of a civil license revocation as an "aggravating factor" did not violate due process rights. *Id.* at 301. We note that we have neither ruled on the constitutional issues raised in *Coleman* nor on any other constitutional challenges to the collateral use of civil losses of license for felony liability.

also issued decisions aimed at avoiding potential for manipulation in the sentencing context. *See, e.g., State v. Folley,* 438 N.W.2d 372, 374 (Minn.1989) (stating that jail credit should not turn on matters that are subject to manipulation such as the timing of the filing of a criminal complaint); *State v. Hernandez,* 311 N.W.2d 478, 481 (Minn.1981) (approving a method for sentencing multiple current convictions under circumstances of the case which showed no indication of manipulation).

We believe that to advance the interests of consistency and avoidance of manipulation, qualified prior impaired driving incidents, whether evidenced by criminal conviction or civil losses of license, may be ordered by a bright-line rule. This could be accomplished by the date of the underlying impaired driving behavior. *Cf.* Minnesota Sentencing Guidelines II.B.1, II.B.101 ("When multiple current offenses are sentenced on the same day before the same judge, sentencing shall occur in the order in which the offenses occurred."). Then the first three incidents, whether established by criminal conviction or license revocation, would be applied as enhancers unavailable to be double counted thereafter in the computation of the criminal history score. If there are subsequent qualified impaired driving incidents that resulted in convictions, those convictions would be available in the computation of the criminal history score.

Of concern with this method, however, is that it is evident from the guidelines that a prior alcohol-related driving incident, evidenced only by a civil proceeding, cannot be used in the computation of the criminal history score to enhance the presumptive punishment available under the sentencing guidelines system. In choosing the architecture of the sentencing guidelines, the commission decided to arrange the guidelines on a two-dimensional grid. The vertical axis of the grid represents the seriousness of the offender's current offense and the horizontal axis represents the extent of the offender's prior criminal record. Andrew von Hirsch, *Constructing Guidelines for Sentencing: the Critical Choices for the Minnesota Sentencing Guidelines Commission,* 5 Hamline L.Rev. 164, 180 (1982). While there have been changes to the guidelines over the years, including the implementation of a criminal history weighting scheme in the computation of the criminal history score, criminal history for purposes of sentencing is still predicated on the offender's criminal record. Richard S. Frase, *The Role of the Legislature, The Sentencing Commission and Other Officials under the Minnesota Sentencing. Guidelines,* 28 Wake Forest L.Rev. 345, 360 (1993).

The allocation of civil losses of license for enhancement of the current driving-while-impaired offense to the felony level, however, effectively increases de facto the presumptive sentence available under the guidelines in a manner not contemplated by the guidelines grid. Accordingly, where there are multiple qualified criminal and civil prior impaired driving incidents available for calculating the sentence, for purposes of enhancing the current offense to the felony level, prior criminal convictions should be used before qualified civil incidents are allocated for that purpose; and, consistent with established policies under the guidelines, if a prior driving-while-impaired conviction has been used as a predicate offense for enhancement to create a felony level offense, that same conviction cannot be used a second time in the determination of the offender's criminal history score.

■ In summary, the court of appeals' decision that at sentencing a prosecutor can select from the qualified impaired driv-

ing incidents those that will be used to enhance the current offense level and those that remain for criminal history computation is fraught with potential for inconsistent application and manipulation which is contrary to the guidelines' goals in setting up the determination of the presumptive sentence in an individual case. Therefore, we hold that in sentencing a felony driving-while-impaired offender, qualified criminal predicate convictions must first be allocated for the purpose of enhancement of the current driving-while-impaired offense to a felony, and the same predicate convictions cannot be used a second time in the determination of the offender's criminal history score. Qualified criminal predicate convictions in excess of those used for enhancement will be available in the computation of the offender's criminal history score on the current offense.

Thus, in Zeimet's case, counting three qualifying prior driving-while-impaired convictions as the required enhancers, we reduce the sentence to 66 months, the presumptive sentence under the rule we have announced in this case. Zeimet's sentence is in all other respects affirmed.

Affirmed as modified.

ANDERSON, G. BARRY, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.