**STATE of Minnesota, Appellant,**

v.

**Massoud GOHARBAWANG, Respondent.**

No. A05–747.

Court of Appeals of Minnesota.

Oct. 25, 2005.

Mike Hatch, Attorney General, St. Paul, MN; and Amy Klobuchar, Hennepin County Attorney, Michael K. Walz, Minneapolis, MN, for appellant.

John S. Hughes, Kyle Wermerskirchen, Law Offices of John S. Hughes, Ltd., Minneapolis, MN, for respondent.

Considered and decided by SHUMAKER, Presiding Judge; KALITOWSKI, Judge; and MINGE, Judge.

## OPINION

KALITOWSKI, Judge.

Appellant State of Minnesota challenges the district court's dismissal of felony charges against respondent Massoud Goharbawang for DWI and refusal to submit to chemical testing. The state enhanced the charges to felonies based on respondent's prior license revocations for refusal to submit to chemical testing. The state contends that the district court erred by determining that (1) a license revocation for refusing to submit to chemical testing does not occur until seven days after the driver has been given the notice and order of revocation; and (2) due process does not allow the use of a license revocation for enhancement purposes when the defendant has not exhausted the right to judicial review of the revocation.

## FACTS

The facts of this case are undisputed. On July 16, 2004, respondent was stopped by a police officer while driving a motor vehicle because the officer had articulable suspicion to believe respondent was driving while impaired. The officer read respondent the implied-consent advisory, which included information that refusal to submit to chemical testing is a crime. Respondent refused testing. On July 19, 2004, the state charged respondent with first-degree DWI and first-degree refusal to submit to chemical testing. Both counts were enhanced to felonies based on three prior revocations of respondent's driver's license for failure to submit to chemical testing. *See* Minn.Stat. § 169A.24, subd. 1 (2004) (providing that "[a] person who violates section 169A.20 (driving while impaired) is guilty of first-degree driving while impaired if the person ... commits the violation within ten years of the first of three or more qualified prior impaired driving incidents"); Minn.Stat. § 169A.03,

subd. 21(a)(3) (2004) (defining a "prior impaired driving-related loss of license" to include a revocation under the DWI statute); Minn.Stat. § 169A.20, subds. 2, 3 (2004) (providing that a person who refuses to submit to chemical testing "may be sentenced as provided in section 169A.24 (first-degree driving while impaired)").

On July 3, 5, and 10, 2004, respondent had previously been stopped while driving a motor vehicle, the implied-consent law was invoked, and respondent refused to submit to chemical testing. As a result, respondent was issued a notice and order of revocation after each stop. Each notice materially states:

## NOTICE AND ORDER OF REVOCATION

On the date shown above (\*date issued) you were asked to submit to a test pursuant to Minnesota Statutes Section 169A.50–.53, the Implied Consent Law.

Your Driver License and/or privilege to drive in this state is hereby ***REVOKED. THIS IS YOUR OFFICIAL NOTICE OF REVOCATION.*** This revocation will take effect 7 days after the issue date shown above.

. . . .

Because you refused to submit to testing, the Commissioner of Public Safety will revoke your Driver License and/or driving privileges for one year.

. . . .

This entire notice is valid as a temporary license from the date shown for 7 days.

Each notice also states that the driver may seek judicial review of the revocation within 30 days of revocation.

Respondent filed a motion to dismiss the felony charges from the July 16, 2004 stop.

The district court held that for the purpose of using a revocation to enhance a subsequent offense, the revocation period does not start until seven days after receipt of the notice and order of revocation. Respondent received his third notice and order of revocation on July 10, 2004, six days before the incident on July 16, 2004. The district court dismissed the felony charges, stating that "[o]n July 16, [respondent] had, at most, only two qualified impaired driving incidents, which does not satisfy the First–Degree DWI or First–Degree Refusal statutory requirement of three prior impaired driving-related losses of license." The district court went on to hold that even if respondent's July 10 revocation was effective on July 10, thus constituting a third prior impaired driving-related loss of license, it was a violation of respondent's due-process rights to use the license revocations for enhancement "prior to a timely petition for judicial review within 30 days of revocation or waiver thereof."

## ISSUES

1. Did the district court err in determining that a license revocation for refusing to submit to chemical testing does not occur until seven days after the driver has been given a notice and order of revocation?

2. Did the district court err in determining that due process does not allow the use of a prior license revocation to enhance a subsequent charge if the defendant has not exhausted his right to judicial review on the prior revocation?

## ANALYSIS

■ A reviewing court is not bound by and need not give deference to a district court's decision on a purely legal issue. *Modrow v. JP Foodservice, Inc.*, 656 N.W.2d 389, 393 (Minn.2003). The application of law to undisputed facts is a question of law, which this court reviews de novo. *Morton Bldgs., Inc. v. Comm'r of Revenue*, 488 N.W.2d 254, 257 (Minn.1992).

## I.

■ ˙ Under Minn.Stat. § 169A.52, subd. 6 (2004), "[a] revocation ... becomes effective at the time the commissioner or a peace officer acting on behalf of the commissioner notifies the person of the intention to revoke, disqualify, or both, and of revocation or disqualification." The district court found this statutory language to be in direct conflict with the language sent to respondent in the notice and order of revocation, which provided that the "revocation will take effect 7 days after the issue date." The court stated that "[i]n fairness to persons trying to determine the effective date of their revocation and for purposes of use of a prior revocation for enhancement, the court concludes that the revocation period does not start until seven days after receipt of the Notice form."

The district court found ambiguity to exist between the language in the statute and the language in the notice and order of revocation. But importantly, the court did not find that the statute itself was ambiguous. And we conclude that the plain meaning of the statute controls. *See* Minn.Stat. § 645.16 (2004) (stating that "[w]hen the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit"). Under Minn.Stat. § 169A.52, subd. 6, the revocation takes effect when the officer issues the notice and order of revocation. *See also* Minn.Stat. § 169A.52, subd. 7(a) (2004) (stating that "a peace officer requiring a test or directing the administration of a chemical test shall serve immediate notice of intention to revoke and of revoca-

tion on a person who refuses to permit a test").

Subdivisions 6 and 7(a) of Minn.Stat. § 169A.52 refer to notice of the intention to revoke and of revocation. Subdivision 6 explicitly states that the revocation becomes effective as soon as the police officer notifies the driver of the intention to revoke and of revocation. Indeed, the notice and order of revocation given to respondent states that "[y]our [d]river [l]icense and/or privilege to drive in this state is hereby **REVOKED. THIS IS YOUR OFFICIAL NOTICE OF REVOCATION.**" We conclude that the fact that the notice is valid as a temporary license for seven days does not delay the immediate and ongoing revocation mandated by Minn.Stat. § 169A.52, subds. 6 and 7. Therefore, the state could properly use respondent's revocations from July 3, 5, and 10, 2004, to enhance the charges arising from respondent's refusal to submit to chemical testing on July 16, 2004.

## II.

■ "Within 30 days following receipt of a notice and order of revocation or disqualification pursuant to section 169A.52 (revocation of license for test failure or refusal), a person may petition the court for review." Minn.Stat. § 169A.53, subd. 2(a) (2004). Here, the district court held that even if revocation is effective when the notice and order of revocation is issued, "due process does not allow the use of a prior license revocation as an aggravating factor predicate to a felony charge where a defendant has not waived the right to judicial review, by the running of the 30 day period *prior* to the felony charge."

■ The United States Supreme Court has articulated a requirement for "meaningful review" of an administrative proceeding when the determination made in that proceeding "is to play a critical role in

the subsequent imposition of a criminal sanction." *United States v. Mendoza–Lopez*, 481 U.S. 828, 837–38, 107 S.Ct. 2148, 2155, 95 L.Ed.2d 772 (1987) (citations omitted). Thus, if defects in an administrative proceeding foreclose judicial review, "an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively the element of a criminal offense." *Id.*

This court has held that a party who failed to exercise available judicial review was not deprived of his due-process rights when the state used his prior revocation as a statutory aggravating factor to enhance subsequent DWI charges. *State v. Coleman*, 661 N.W.2d 296, 301 (Minn.App. 2003), *review denied* (Minn. Aug. 5, 2003). In *Coleman*, the defendant was convicted of first-degree DWI and argued on appeal that the use of a prior revocation of driving privileges as an aggravating factor violated his due-process rights because the prior revocation was not subject to "meaningful judicial review." *Id.* at 300. This court noted the separate and distinct proceedings for administrative and judicial review of driving-privileges revocation under Minnesota law, and stated that although Coleman had sought administrative review of his revocation, he did not seek judicial review. *Id.* at 301. The court concluded that the availability of judicial review of a driving-privileges revocation, although unexercised, satisfied the *Mendoza–Lopez* requirement for available review. *Id.*

The facts here provide no reason to depart from the rationale in *Coleman*. All of respondent's revocation notices specified the opportunity for judicial review, which the record shows he never sought. The availability of that review, although unexercised, satisfies the due-process requirement of meaningful review. The shortened timeframe of respondent's qualifying

revocations, coming within ten days before the DWI and implied-consent charges that are the subject of this proceeding, does not alter this result. And respondent was not prejudiced because, had he sought and obtained rescission of one of the revocations on review, the statutory requirement for an aggravating factor of his current charges would no longer have been met.

We conclude that respondent's right to due process was not violated here. Respondent drove a motor vehicle on July 16, 2004, and refused chemical testing after his license had been revoked on July 3, 5, and 10, 2004. Because respondent had the opportunity for judicial review of his prior revocations, the use of those revocations to enhance the charges arising from his refusal to submit to chemical testing on July 16, 2004, was proper.

## DECISION

Respondent drove a motor vehicle on July 16, 2004, and refused chemical testing after the implied-consent law had been invoked. He did so after receiving a notice and order of revocation for refusing chemical testing on July 3, 5, and 10, 2004. The prior revocations were effective immediately and were not tolled by the provision for a temporary driver's license. And respondent's due process rights were not violated because he had the right to seek judicial review within 30 days after receipt of the notice. Therefore, the district court erred in holding that the state could not use respondent's prior revocations for enhancement purposes.

**Reversed.**