**Lance Martin ODEGARD,
petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. A08–2012.

Court of Appeals of Minnesota.

June 16, 2009.

Glenn P. Bruder, Mitchell, Bruder & Johnson, Edina, MN, Tristam O. Hage, New Brighton, MN, for appellant.

Lori Swanson, Attorney General, St. Paul, MN, Keith Helgeson, Yellow Medicine County Attorney, Granite Falls, MN, for respondent.

Considered and decided by STONEBURNER, Presiding Judge; BJORKMAN, Judge; and MUEHLBERG, Judge.*

## OPINION

BJORKMAN, Judge.

In this appeal from the district court's denial of postconviction relief, appellant argues that his 2003 guilty plea should be vacated or his conviction modified based on the supreme court's decision in *Wiltgen.* Because we conclude that *Wiltgen* does not apply retroactively to convictions that were final when *Wiltgen* was decided, we affirm.

## FACTS

On March 19, 2003, appellant Lance Odegard pleaded guilty to first-degree driving while impaired (DWI), a felony violation of Minn.Stat. §§ 169A.20, subd. 1(1), 169A.24 (2002). The statutory aggravating factors that elevated Odegard's DWI to a felony were two prior DWI convictions from 1998 and 2001 and a May 2002 implied-consent driver's license revocation.

On May 8, 2008, Odegard petitioned for postconviction relief, arguing that his 2002 license revocation was not a valid aggrava-

ting factor because he had requested but not yet obtained judicial review of the revocation. Odegard argued that his guilty plea should be vacated or modified because *Wiltgen* precludes using an unreviewed driver's license revocation as a statutory aggravating factor to enhance a DWI offense. The district court denied Odegard's petition, concluding that *Wiltgen* was factually distinguishable and did not apply retroactively to Odegard's conviction. This appeal follows.

## ISSUE

Does *Wiltgen* apply retroactively to cases that were final when *Wiltgen* was decided?

## ANALYSIS

"A petition for postconviction relief is a collateral attack on a conviction that carries a presumption of regularity." *Greer v. State,* 673 N.W.2d 151, 154 (Minn. 2004). We will not reverse the postconviction court's decision absent an abuse of discretion. *Dukes v. State,* 621 N.W.2d 246, 251 (Minn.2001). But we review de novo a postconviction court's legal conclusions, such as whether a decision applies retroactively. *Butala v. State,* 664 N.W.2d 333, 338 (Minn.2003); *see also Erickson v. State,* 702 N.W.2d 892, 896 (Minn.App. 2005) ("Whether or not a decision applies retroactively is a question appellate courts review de novo.").

Odegard does not dispute that his conviction was final before the supreme court decided *Wiltgen* but contends that *Wiltgen* should apply retroactively to his 2003 conviction. The supreme court decided *Wiltgen* on August 23, 2007. 737 N.W.2d at 561. Asked principally to decide the constitutionality of enhancing a DWI convic-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

tion from third degree to second degree based on an unreviewed driver's license revocation, the supreme court held that when judicial review of an administrative license revocation has been requested but not yet provided, the use of the license revocation to establish an aggravating factor for a subsequent DWI charge would violate the defendant's right to due process. *Id.* at 564, 570.

To determine whether *Wiltgen* applies retroactively to Odegard's conviction, we must first identify the proper retroactivity standard. Minnesota courts follow the retroactivity standard set forth in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), when addressing new rules of federal constitutional criminal procedure. *See Danforth v. State*, 761 N.W.2d 493, 498–99 (Minn.2009) (stating that *"Teague* may not be a perfect rule, but we believe it is preferable to the alternatives"). But our supreme court has traditionally distinguished between retroactive application of new rules of federal constitutional criminal procedure and retroactive application of its own decisions. *E.g., O'Meara v. State*, 679 N.W.2d 334, 338–39 (Minn.2004) (distinguishing between state supreme court's role in determining retroactivity of decisions on state law and United States Supreme Court's role in determining retroactivity of new rules of federal criminal procedure). *Wiltgen* was a state decision, applying federal constitutional principles to a circumstance created by state statute. We therefore recognize the supreme court's authority to apply a retroactivity standard other than *Teague* to *Wiltgen.*

Nonetheless, our review of recent retroactivity cases leads us to conclude that the supreme court would apply the *Teague* standard here. The supreme court has applied a *Teague*-based standard in previous cases to preclude retroactive applica-

tion of its own new rules of law announced after the challenged conviction became final. *See, e.g., Stiles v. State*, 716 N.W.2d 327, 329 (Minn.2006) (rejecting postconviction challenge based on *State v. Dahlin*, 695 N.W.2d 588 (Minn.2005), and citing *O'Meara* and *Teague* for proposition that "if a defendant's conviction was already final at the time the new rule of law was announced, the defendant ordinarily may not take advantage of the new rule because it will not be retroactive"); *cf. Hutchinson v. State*, 679 N.W.2d 160, 164–65 (Minn.2004) (holding that *State v. Misquadace*, 644 N.W.2d 65 (Minn.2002), "was not based on an interpretation or clarification of [statute]," but "established a new rule of law" and, therefore, does not apply to a conviction final before it was decided). We also observe that the supreme court's *Danforth* opinion favored *Teague* as "a bright line rule on the issue of when relief is to be retroactive." 761 N.W.2d at 499 (citing *O'Meara*, 679 N.W.2d at 339 for "where that line is drawn"). We view this statement as an indication that the supreme court prefers a uniform retroactivity standard, applicable to all new rules of constitutional criminal procedure—state and federal—announced after a conviction becomes final. We therefore apply the *Teague* standard to Odegard's retroactivity argument.

Under *Teague*, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." 489 U.S. at 310, 109 S.Ct. at 1075. In assessing retroactivity under *Teague*, therefore, we first ask whether the rule is new or merely a predictable extension of a pre-existing doctrine. *Id.* at 301, 109 S.Ct. at 1070. A new rule will be given retroactive effect in cases that had become final only if one of the two *Teague* exceptions applies. *Danforth*, 761 N.W.2d

at 496. The first exception applies when the new rule "places certain specific conduct beyond the power of the criminal law-making authority to proscribe." *Id.* (citing *Teague,* 489 U.S. at 311–12, 109 S.Ct. at 1075–76). The second applies when the new rule "is a 'watershed' rule of criminal procedure . . . without which the likelihood of an accurate conviction would be seriously diminished." *Id.* (citing *Teague,* 489 U.S. at 311–12, 109 S.Ct. at 1075–76).

■ Odegard asserts that *Wiltgen* did not announce a "new rule" within the meaning of *Teague.* Odegard correctly observes that *Wiltgen* did not overrule a previous decision. But the *Wiltgen* ruling "was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague,* 489 U.S. at 301, 109 S.Ct. at 1070. To the contrary, our jurisprudence preceding *Wiltgen* established that the availability of judicial review of a license revocation, whether or not exercised, was sufficient to satisfy due process. *See State v. Goharbawang,* 705 N.W.2d 198, 202–03 (Minn.App.2005) (holding that availability of judicial review of license revocations effective only days before arrest for enhanced DWI offense was sufficient to satisfy due process even though no review took place prior to arrest), *review denied* (Minn. Jan. 17, 2006); *State v. Coleman,* 661 N.W.2d 296, 301 (Minn.App.2003) ("Because [the defendant] had the opportunity for meaningful judicial review of . . . revocation of his driving privileges, use of the revocation as an aggravating factor did not violate his due-process rights."), *review denied* (Minn. Aug. 5, 2003). And when we decided *Wiltgen,* we held, based on *Goharbawang,* "that the availability of a statutory mechanism for judicial review of the revocation satisfied due process where Wiltgen 'affirmatively procured a collateral stay' and took no action to advance the implied consent review petition to the

hearing stage." 737 N.W.2d at 565 (quoting *State v. Wiltgen,* No. A06–152, 2006 WL 1320594, at *3–*4 (Minn.App. May 16, 2006)). Odegard even concedes that "*Wiltgen* had a broad prospective application and in that sense, was 'new.'" We conclude that *Wiltgen* established a new rule.

■ Odegard next argues that the *Teague* exceptions apply so that *Wiltgen* must be applied retroactively to cases on collateral review. He first argues that *Wiltgen* did not declare a constitutional rule of criminal procedure but merely clarified the substantive elements of first-degree DWI. We disagree. *Wiltgen* addressed a classic procedural concern—a defendant's opportunity to be heard. *See Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (quotation omitted)). And as the state points out, the *Wiltgen* court determined that "use of an unreviewed [license] revocation to enhance a subsequent DWI rises to the level of a violation of [the] right to *procedural due process.*" 737 N.W.2d at 570 (emphasis added). Indeed, the procedural nature of the *Wiltgen* decision is underscored by the supreme court's observation that the state can alter its charging procedures to satisfy the judicial review requirement and still prosecute enhanced DWI offenses. *Id.* at 572 n. 7. Because *Wiltgen* established a procedural rule and did not affect the scope of conduct that the criminal law-making authority may proscribe, the first *Teague* exception does not apply.

■ We also reject Odegard's contention that if *Wiltgen* announced a new rule of constitutional criminal procedure, the second *Teague* exception applies because the rule "seems to meet" the definition of a "watershed" rule. "To be a wa-

tershed rule, the new rule must be one without which 'the likelihood of an accurate conviction is seriously diminished.'" *State v. Houston*, 702 N.W.2d 268, 273 (Minn.2005) (quoting *Teague*, 489 U.S. at 313, 109 S.Ct. at 1077). It is not enough for a rule to improve the accuracy of proceedings; it must "alter our understanding of the *bedrock procedural elements* that must be found to vitiate the fairness of a particular conviction." *Id.* (quoting *Teague*, 489 U.S. at 311, 109 S.Ct. at 1076); *see also Danforth*, 761 N.W.2d at 499 (affirming *Teague* "watershed" rule retroactivity principle based on finality interests over broader standard that would apply "where the absence of the new rule seriously diminished the accuracy of the trial but did not affect the fundamental fairness of the criminal proceeding"). Under this stringent standard, "[r]ules qualifying under the second *Teague* exception as 'watershed' rules are extremely rare." *Houston*, 702 N.W.2d at 273.

*Wiltgen* determined that "[u]sing a license revocation as a conclusive element of a crime when judicial review has been requested but has not yet occurred greatly increases the risk of an erroneous deprivation" of the defendant's liberty. 737 N.W.2d at 569. But while the *Wiltgen* court held that this risk was sufficient to raise due process concerns, the court did not specifically determine that use of unreviewed license revocations to enhance a DWI offense was fundamentally unfair. The announcement of a new rule designed to safeguard constitutional rights does not necessarily "alter our understanding of the *bedrock procedural elements* that must be found to vitiate the fairness of a particular conviction." *Houston*, 702 N.W.2d at 273; *cf. Tyler v. Cain*, 533 U.S. 656, 666–67 & n. 7, 121 S.Ct. 2478, 2484 & n. 7, 150 L.Ed.2d 632 (2001) (rejecting the notion that "all new rules relating to due process" or even all new structural rules necessarily qualify as watershed rules).

We note that our supreme court declined to give retroactive application to *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), even though the Sixth Amendment rights those cases address are undisputedly central to the accuracy of a trial or sentence. *Danforth v. State*, 718 N.W.2d 451, 460 (Minn. 2006), *rev'd on other grounds*, —— U.S. ——, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008); *Houston*, 702 N.W.2d at 273. The rule announced in *Wiltgen* is far narrower than those announced in *Blakely* and *Crawford*, and "it has none of the primacy and centrality of the rule adopted in *Gideon* [*v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) ]," the only case the United States Supreme Court has ever recognized as qualifying under the watershed-rule exception. *Beard v. Banks*, 542 U.S. 406, 417–20, 124 S.Ct. 2504, 2514–15, 159 L.Ed.2d 494 (2004) (quotation omitted). We therefore conclude that *Wiltgen* did not announce a watershed rule that merits retroactive application to Odegard's 2003 conviction.

## DECISION

*Wiltgen* is not a "watershed" new rule of constitutional criminal procedure that applies to cases on collateral review. Accordingly, the district court properly denied appellant's petition for postconviction relief.

**Affirmed.**