STATE of Minnesota, Respondent,

v.

**Jessica Ann WILTGEN, Appellant.**

No. A06–152.

Supreme Court of Minnesota.

Aug. 23, 2007.

Steven M. Tallen, Tallen And Baertschi, Minneapolis, MN, and Lori Swanson, Minnesota Attorney General, Saint Paul, MN, for Respondent.

Richard F. Koch, Andrew S. Garvis, Koch and Garvis, LLC, Minneapolis, MN, for Appellant.

## OPINION

HANSON, Justice.

This case presents the question of whether an administrative license revocation, which did not receive a prompt postrevocation judicial review because of an automatic stay pending the prosecution of the associated criminal charge, can constitutionally be used as an aggravating factor to support the enhancement of a subsequent driving while impaired (DWI) charge from third-degree to second-degree. Appellant Jessica Ann Wiltgen was charged with second-degree DWI for a September 2005 driving incident. The charge of second-degree DWI was based in part on Wiltgen's August 2005 DWI license revocation, as to which judicial review had been requested but was stayed.

The district court concluded that the enhancement of Wiltgen's September charge based on the use of the August revocation would violate due process and granted Wiltgen's motion to reduce the charge to third-degree. The court of appeals reversed, holding that the availability of a statutory mechanism for judicial review of the revocation satisfied due process where Wiltgen "affirmatively procured a collateral stay" and took no action to advance the implied consent review petition to the hearing stage. *State v. Wiltgen,* No. A06–152, 2006 WL 1320594, at *3–4 (Minn.App. May 16, 2006) (citing *State v. Goharbawang,* 705 N.W.2d 198, 202 (Minn.App. 2005), *rev. denied* (Minn. Jan. 17, 2006)). We reverse the court of appeals and affirm the district court's order reducing the DWI charge to third-degree.

Wiltgen was arrested on August 13, 2005, for DWI. Following Wiltgen's arrest, her driver's license was administratively revoked under Minnesota's implied consent law and she was charged with third-degree DWI. Wiltgen challenged the license revocation by timely filing a petition for judicial review pursuant to Minn.Stat. § 169A.53, subd. 2 (2006).

Although Minn.Stat. § 169A.53, subd. 3 (2006), requires that the hearing be held on the license revocation "at the earliest practicable date, and in any event no later than 60 days following the filing of the petition for review," and Wiltgen's petition demanded a hearing within 60 days, a district court Standing Order provided that the "hearing date will be scheduled upon disposition of the associated criminal case."[1] The effect of the Standing Order, at least in Wiltgen's case, was to eliminate the 60–day hearing requirement on her August 2005 license revocation because Wiltgen's associated criminal case had not been disposed of, and the hearing on her license revocation had not been held, at the time of the oral argument of this appeal, some 16 months after the filing of Wiltgen's petition for review.

The clerk's notice of the Standing Order stated that a petitioner could request a stay of the balance of the revocation period under Minn.Stat. § 169A.53, subd. 2(c), and represented that such a stay would be granted. After the Standing Order prevented the scheduling of a hearing on Wiltgen's petition, Wiltgen requested a stay of the balance of the revocation period and the district court granted that stay on August 30, 2005.

On September 13, 2005, one month after her first DWI arrest, Wiltgen was again arrested for DWI. Following this arrest, Wiltgen was charged with second-degree DWI. This is the charge that is now before us for review. Second-degree DWI requires that two or more aggravating factors be present when the DWI violation was committed. Minn.Stat. § 169A.25 (2006). Under Minn.Stat. § 169A.095 (2006), "each qualified prior impaired driving incident within the ten years immediately preceding the current offense is counted as a separate aggravating factor." A "qualified prior impaired driving incident" includes a prior impaired driving-related loss of license, which includes a license revocation under the implied consent law. Minn.Stat. § 169A.03, subds. 21–22 (2006). Wiltgen's August 2005 DWI license revocation was listed as an aggra-

---

[1] Although the district court file for the September 2005 DWI charge does not contain a copy of the notice of the Standing Order that was provided to Wiltgen in connection with the August 2005 revocation, it does contain a copy of the Standing Order provided to Wilt-

gen in connection with the September 2005 license revocation and we assume, based on responses by counsel at oral argument, that the Standing Orders were identical for each license revocation.

vating factor in her second-degree DWI charge.[2]

When the second-degree DWI charge resulting from the September 2005 arrest was called for trial on November 22, 2005, Wiltgen moved to reduce the charge from second-degree to third-degree, challenging the use of her August 2005 license revocation as an aggravating factor. Wiltgen argued that the state could not constitutionally charge her with second-degree DWI by using an unreviewed license revocation as one of the aggravating factors. The state contended that because Wiltgen's August 2005 license revocation was merely stayed, not rescinded, it was proper for the state to use it as an aggravating factor when charging her for the September 2005 offense.

The district court concluded that "a charge cannot be enhanced [by an earlier revocation] where the defendant made a timely challenge to the revocation and the stay is still in force." The court granted Wiltgen's motion to reduce the second-degree DWI to third-degree DWI. The court of appeals reversed, stating that the "availability of [judicial] review, although unexercised, satisfies the due process requirements of meaningful review" of revocations. See Wiltgen, 2006 WL 1320594, at *3–4. The court noted that Wiltgen sought the stay and took no action to advance the hearing on her petition, stating that, under Goharbawang, there was "little difference between no petition and a stayed petition." 2006 WL 1320594, at *3.

We are asked to decide whether using an unreviewed license revocation as an aggravating factor in a subsequent DWI charge violates due process when the defendant has requested but has not yet received judicial review of that revocation. This constitutional question involves the application of law to undisputed facts. Accordingly, our review is de novo. See Fedziuk v. Comm'r of Pub. Safety, 696 N.W.2d 340, 344 (Minn.2005).[3]

I.

We begin by analyzing the combined effect of the district court's Standing Order delaying an implied consent hearing until after the disposition of the associated criminal case and the district court's order staying the balance of the revocation period pending the resolution of both the associated criminal case and the implied consent case.

As noted earlier, the effect of the Standing Order was to prevent a hearing on Wiltgen's petition for judicial review of her August 2005 revocation until long after 60 days from the date her petition was filed. This might not be the inevitable effect of the Standing Order in all cases, because theoretically the associated criminal case could be disposed of and the implied consent hearing conducted within 60 days from the filing of the petition for judicial review of the revocation. But, as a practical matter, it is likely that the Standing Order will prevent judicial review of most license revocations until after the 60–day period because of the time necessary to dispose of the associated criminal case and

2. Wiltgen had also been convicted of driving while under the influence on April 30, 2002.

3. Wiltgen argues that this appeal is not properly before the court because the state did not establish critical impact. We disagree. Since the suppression of Wiltgen's August license revocation led directly to the dismissal

of the second-degree DWI charges, it is clear that the order had the requisite critical impact. See State v. Burbach, 706 N.W.2d 484, 487 n. 1 (Minn.2005) (noting that where suppression of evidence led to the dismissal of all of the criminal charges critical impact was established).

to schedule and conduct the implied consent hearing after that disposition. It appears that the district court assumed that the Standing Order would delay the implied consent hearing beyond the 60–day period because the clerk's notice that accompanied the Standing Order stated that a petitioner could seek a stay of the balance of the revocation period under Minn. Stat. § 169A.53, subd. 2(c) (2006). Subdivision 2(c) authorizes a stay of the balance of the revocation only "if the hearing has not been conducted within 60 days after filing of the petition." And, the district court ordered a stay of the balance of Wiltgen's revocation period well before the 60–day period had expired, obviously contemplating that the effect of the Standing Order would be that the 60–day period would expire before the implied consent hearing was conducted.

Viewing the Standing Order in this light, we must disagree with the court of appeals' conclusion that Wiltgen should be faulted for having "procured a collateral stay" and for not taking action to advance her petition for judicial review to the hearing stage. *Wiltgen*, 2006 WL 1320594, at *3. That conclusion appears to confuse the effect of the Standing Order with that of the order staying the balance of the revocation period. Wiltgen did not procure the Standing Order. Instead, that order was unilaterally imposed by the district court. And it was the Standing Order that made it impossible for Wiltgen to obtain an implied consent hearing within 60 days after filing her petition for judicial review. Arguably, Wiltgen could have sought relief from the Standing Order, and pressed for a prompt implied consent hearing, but that option was not described in the clerk's notice and there is no basis in this record

to conclude either that the state would have joined in such a request or that the district court would have granted it. As to the latter, the Standing Order suggests the contrary.

■ The only stay that Wiltgen affirmatively sought was the stay of the balance of the revocation period. That stay did not have the effect of delaying or preventing the implied consent hearing. Instead, it merely allowed Wiltgen to reinstate her driving privileges during the period when the implied consent hearing was delayed by the Standing Order. Wiltgen's request to stay the balance of her revocation period, thus, cannot be seen as any waiver of the right to the implied consent hearing, but instead should be seen as an action taken to mitigate the prejudice caused by the Standing Order.

Accordingly, the court of appeals' conclusion that the stayed petition was essentially the same as a case where the driver did not file a petition for judicial review of a revocation was erroneous—the "stayed petition" resulted from the Standing Order and was imposed on Wiltgen, not sought by her.[4] *Wiltgen*, 2006 WL 1320594, at *3 citing *Goharbawang*, 705 N.W.2d 198.

We intend no criticism of the policy considerations underlying the Standing Order. Given the substantial case load facing the district court, we understand the desire to avoid the waste of judicial and party resources in conducting duplicate proceedings, and we recognize that, because the trial of the associated criminal case may result in revocation, it could render the implied consent proceeding moot. But those policy considerations have legal implications in the narrow circumstance

---

4. The court of appeals' analogy to its decision in *Goharbawang*, 705 N.W.2d 198, was misplaced. In *Goharbawang*, the driver failed to timely petition for judicial review of his revocation and thus can fairly be said to have waived that review. Wiltgen, in contrast, did timely petition for judicial review and continues to seek it.

where the revocation is sought to be used to aggravate a subsequent offense, during the time when judicial review of the revocation has been prevented by the Standing Order. We turn now to a discussion of those implications.[5]

## II.

Wiltgen argues that the use of an unreviewed prior license revocation at the trial of a subsequent DWI charge, to establish an aggravating factor that enhances that DWI charge, would violate her right to due process where she has requested judicial review of the revocation and judicial review of the revocation has not yet been promptly provided because of the Standing Order.

■ We begin our analysis of that argument by reviewing our prior decisions addressing the due process concerns that arise from the legislature's provision for the prehearing revocation of driver's licenses. Since 1982, when prehearing revocation was first authorized, we have consistently employed the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), to determine whether prehearing revocations violate due process. *See, e.g., Bendorf v. Comm'r of Pub. Safety*, 727 N.W.2d 410, 416 (Minn.2007); *Fedziuk*, 696 N.W.2d at 344; *Hamilton v. Comm'r of Pub. Safety*, 600 N.W.2d 720, 723 (Minn.1999); *Davis v. Comm'r of Pub. Safety*, 517 N.W.2d 901, 904–05 (Minn. 1994); *Heddan v. Dirkswager*, 336 N.W.2d 54, 59 (Minn.1983). That three-part test requires consideration of: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the

probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335, 96 S.Ct. 893; *see also Wilkinson v. Austin*, 545 U.S. 209, 224–25, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005).

In *Heddan*, the private interest that we focused on was the loss of the driving privilege. *Heddan*, 336 N.W.2d at 60. We said that the weight to be given that private interest depends on another three factors: "(1) the duration of the revocation; (2) the availability of hardship relief; and (3) the availability of prompt post-revocation review." *Id.* (citing *Mackey v. Montrym*, 443 U.S. 1, 11–12, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979)). In *Fedziuk*, we observed that the *Montrym* factors (1) and (2) did not weigh heavily in favor of the private interest because prehearing revocations for as long as 360 days have been upheld and Minnesota law does provide for hardship relief. *Fedziuk*, 696 N.W.2d at 346 n. 6. But we concluded that the 2003 statutory elimination of the requirement that a hearing be "held at the earliest practicable date, and in any event no later than 60 days following the filing of the petition for review," affected the third *Montrym* factor, the availability of prompt post-revocation review, and thus affected the first part of the *Mathews* three-part test by increasing the weight of the private interest that is affected by the official action. *Fedziuk*, 696 N.W.2d at 346.

■ Ultimately, in *Fedziuk* we concluded that the statutory elimination of the requirement for a prompt postrevocation

---

**5.** This is the analysis that we expressly did not reach in *Bendorf v. Comm'r of Pub. Safety* because *Bendorf* did not involve the use of an administrative revocation to enhance a subsequent DWI. 727 N.W.2d 410, 416 n. 7 (Minn. 2007).

review violated due process and we revived the version of the statute that existed before the 2003 amendments and contained the requirement that the implied consent hearing be "held at the earliest practicable date, and in any event no later than 60 days following the filing of the petition for review." *Id.* at 345; *see* Minn.Stat. § 169A.53, subd. 3(a) (2002). Viewed in the light of *Fedziuk,* the district court's Standing Order would, by itself, violate due process in situations where it has the effect of eliminating the requirement of a prompt postrevocation review. Under the *Mathews* test, the lack of the availability of prompt postrevocation review would sufficiently increase the weight of the private interest that is adversely affected by the revocation to outweigh the other considerations, as it did in *Fedziuk.*

 Of course, the adverse effect on the private interest considered in *Fedziuk,* the loss of the driving privilege, could be reduced by the prompt restoration of the driving privilege. The Standing Order would not violate due process with respect to the driving privilege if the district court stayed the balance of the revocation period and reinstated the driving privilege. Thus, the combination of the Standing Order and the stay of the balance of the revocation period satisfied the concerns in *Fedziuk* about the driver's private interest in the driving privilege. But, as Wiltgen argues, this combination does not reduce the adverse effect on a separate private interest—the liberty interest—where the unreviewed revocation is used to enhance a subsequent DWI. Obviously, the stay of the balance of the revocation period does nothing to reduce or offset the effect of the unreviewed revocation on this private interest. Thus, as in *Fedziuk,* we must separately analyze this private interest under the three-part *Mathews* test.

If convicted of second-degree DWI by using the August 2005 revocation as an aggravating factor, Wiltgen would face a minimum sentence of 90 days of incarceration. *See* Minn.Stat. § 169A.275, subd. 2 (2006). But if the revocation is not used as an aggravating factor, Wiltgen can be convicted only of third-degree DWI and could face a minimum of 30 days of incarceration. *See* Minn.Stat. § 169A.275, subd. 1 (2006). Therefore, the private interest affected—Wiltgen's liberty interest—is substantial. We have said that "freedom from physical restraint has always been at the core of the liberty protected by the Due Process Clause." *In re Linehan,* 594 N.W.2d 867, 872 (Minn.1999) (quoting *Kansas v. Hendricks,* 521 U.S. 346, 356, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997)) (internal quotation marks omitted).

 The second *Mathews* factor we must consider is the likelihood of an erroneous deprivation of the private interest involved. In determining the likelihood of an erroneous deprivation, we must assess the relative reliability of the procedures used and the substitute procedures sought. *Montrym,* 443 U.S. at 13, 99 S.Ct. 2612. At the trial of a second-degree DWI charge, qualified prior impaired driving incidents—including license revocations under the implied consent law—may be used to establish conclusively an element of the offense. Using a license revocation as a conclusive element of a crime when judicial review has been requested but has not yet occurred greatly increases the risk of an erroneous deprivation. The United States Supreme Court has said that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding." *United States v. Mendoza–Lopez,* 481 U.S. 828, 837–38, 107 S.Ct. 2148, 95 L.Ed.2d 772

(1987). In *Mendoza–Lopez,* because there could be no direct judicial review of the deportation proceeding, the Court held that the defendant must be given the opportunity to collaterally attack the administrative determination in the criminal proceeding that resulted from his reentry:

> Depriving an alien of the right to have the disposition in [an administrative] deportation hearing reviewed in a judicial forum requires, at a minimum, that review be made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense.

*Id.* at 839, 107 S.Ct. 2148.

In Wiltgen's case, there remains an opportunity for meaningful review of the administrative license revocation in the implied consent proceeding, but until that review has been provided, the same due process concerns arise from the use of the revocation "to establish an element of a criminal offense." From the standpoint of *Mathews,* the opportunity for erroneous deprivation is more significant where judicial review has not been provided or has not been waived.

 With respect to the third *Mathews* factor, the government interest, we again emphasize that " 'drunken drivers pose a severe threat to the health and safety of the citizens of Minnesota.' " *Bendorf,* 727 N.W.2d at 416–17 (quoting *Heddan,* 336 N.W.2d at 63). The state has a compelling interest in highway safety that justifies its efforts to keep impaired drivers off the road, particularly those drivers who have shown a repeated willingness to drive while impaired. *See id.*

Although we appreciate the important nature of the government interest, we conclude that Wiltgen's interest in her liberty, combined with the risk of erroneous deprivation, outweighs the state's interest in providing enhanced penalties for repeat offenders, pending resolution of the implied consent proceeding. We hold that the potential prejudice suffered by Wiltgen from the use of an unreviewed administrative revocation to enhance a subsequent DWI rises to the level of a violation of her right to procedural due process.

### III.

 Having determined that using a prior unreviewed license revocation as a conclusive element of a crime in a subsequent DWI prosecution violates due process, we must determine whether Section 169A.03, subdivision 22, is unconstitutional. The construction of a statute is a question of law, subject to de novo review by our court. *In re Estate of Palmer,* 658 N.W.2d 197, 199 (Minn.2003). The goal of statutory construction is "to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2006). "When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursing the spirit." *Id.*

> "To ascertain and effectuate the legislature's intent, courts must first look to see whether the statute's language, on its face, is clear or ambiguous. A statute is only ambiguous when it is subject to more than one reasonable interpretation. A court must give a plain reading to any statute it construes, and when the language of the statute is clear, the court must not engage in any further construction."

*In re PERA Police & Fire Plan Line of Duty Disability Benefits of Brittain,* 724 N.W.2d 512, 516 (Minn.2006) (quoting *State v. McCoy,* 682 N.W.2d 153, 158–59 (Minn.2004)). Sections of the statute should be construed together, giving the

words their plain meaning. *Glen Paul Court Neighborhood Ass'n v. Paster,* 437 N.W.2d 52, 56 (Minn.1989).

Minnesota Statutes § 169A.03, subdivision 22, defines qualified prior impaired driving incidents as "prior impaired driving convictions and prior impaired driving-related losses of license." A prior impaired driving-related loss of license includes "a driver's license suspension, revocation, cancellation, denial, or disqualification under * * * 169A.50 to 169A.53 (implied consent law)." Minn.Stat. § 169A.03, subd. 21(a)(1). Sections 169A.50 to 169A.53 of the implied consent law address the chemical tests for intoxication (169A.51), the license revocation penalties for test failure or test refusal (169A.52), and the availability of administrative and judicial review of a license revocation (169A.53).

■ By including section 169A.53 in its definition of a prior impaired driving-related loss of license, the legislature evidenced an intent to limit the use of a license revocation, as an aggravating factor, to a situation where judicial review has already occurred or been waived by the failure to file a timely petition. Had the legislature intended an unreviewed license revocation to qualify as a prior impaired driving-related loss of license it would have referenced only section 169A.52, which addresses the license revocation penalties for test failure or refusal under the implied consent law. Because the legislature included the reference to section 169A.53 in the definition of prior impaired driving-related loss of license, we read the plain language of section 169A.03, subdivision 21, to require that judicial review be completed before a license revocation under the implied con-

sent law may be used as an aggravating factor in a subsequent DWI prosecution.

Even if the language of the statute was not plain, we would reach the same conclusion by applying the statutory presumption that "the legislature does not intend to violate the Constitution of the United States or of this state." Minn.Stat. § 645.17(3) (2006).

## IV.

■ At oral argument before us, some additional focus was given to the pretrial nature of the district court's order and the question was raised whether, even if the revocation could not be used at trial of the DWI charge, it could be used pretrial to supply probable cause to support the second aggravating factor needed to sustain a charge of second-degree DWI. The state argued that the Standing Order did not rescind the revocation, but only stayed the balance of the revocation period, with the result that the revocation still exists as a qualified prior impaired driving incident that can serve as an aggravating factor for the September 2005 offense. We agree that the Standing Order does not purport to rescind the revocation.[6] And we do not base our holding on the conclusion that the administrative revocation no longer exists, but only on the ground that the administrative revocation has not been judicially reviewed. We thus address the question whether an unreviewed revocation, that cannot be used at the trial of a subsequent DWI charge, can nevertheless be used to support probable cause to prevent the pretrial dismissal of the enhanced charge that depends upon it as an aggravating factor.

That question is answered by the Rules of Criminal Procedure. Under Rule 11.03,

---

**6.** We have some concern that the authority of the Standing Order to stay the balance of the revocation period is unclear under Minn.Stat. § 169A.53, subd. 2(c), because that provision does not explicitly authorize a stay before the 60–day period for an implied consent hearing has expired. But we need not resolve that concern to decide this case.

the district court, in determining whether there is sufficient evidence to constitute probable cause to support the charged offense, may only consider evidence that is of the kind or character that meets the requirements of Rule 18.06, subd. 1. The latter rule essentially requires that the evidence be of the same kind and character as evidence needed to support an indictment, which is "evidence that would be admissible at trial," with some exceptions not relevant here. Because we have concluded that the use of the unreviewed August 2005 revocation at trial would violate due process, we further conclude that evidence of the August 2005 unreviewed revocation would not be admissible at trial and thus cannot be considered to support probable cause in a motion made under Rule 11.03.[7]

Further, it is not clear that the district court's reduction of the charge was made in a probable cause context. As noted, the pretrial discussion that led to the reduction occurred on the day scheduled for trial, immediately before the trial was to begin. As of that date, judicial review of the August 2005 revocation had not occurred and that revocation could not be used at trial, for all of the reasons previously stated.

Reversed and remanded.

ANDERSON, RUSSELL A., C.J., took no part in the consideration or decision of this case.

---

7. This result does not seriously prejudice the state because the state can delay the issuance of a second-degree DWI complaint until after the implied consent hearing has been conducted and the revocation has been sustained, or can charge third-degree DWI before the implied consent hearing and amend the complaint to add a second-degree DWI charge after the hearing.