**Charlotte Mary HEINO, Respondent,**

v.

**ONE 2003 CADILLAC, MN LICENSE NO. KFR615, VIN: # 1G6KS54Y83U131208, Appellant.**

**No. A08–0536.**

Court of Appeals of Minnesota.

Feb. 17, 2009.

Steven J. Meshbesher, Kevin M. Gregorius, Meshbesher & Associates, P.A., Minneapolis, MN, for respondent.

John J. Muhar, Itasca County Attorney, Michael J. Haig, Assistant County Attorney, Grand Rapids, MN, for appellant.

Considered and decided by BJORKMAN, Presiding Judge; ROSS, Judge; and CONNOLLY, Judge.

## OPINION

CONNOLLY, Judge.

The state appeals the district court's decision denying forfeiture of respondent's car. We reverse and remand.

## FACTS

The facts in this case are undisputed. On March 7, 2007, respondent Charlotte Mary Heino was arrested for fourth-degree DWI. She was given a notice of intent to revoke her driver's license stating that the revocation would take place on March 14, 2007. On March 22, 2007, respondent filed a petition for judicial review (PJR) of her license revocation. A hearing on the PJR was set for May 1, 2007. On April 9, 2007, respondent waived the requirement that the PJR hearing be held within 60 days of its filing. The hearing on the PJR was reset for August 7, 2007.

On May 9, 2007, respondent was arrested for second-degree DWI. The two aggravating factors listed on the ticket were respondent's 0.26 alcohol concentration and her March 7, 2007 license revocation. Respondent was served with another notice of intent to revoke her driver's license as well as a notice of intent to forfeit her vehicle. The designated offense supporting the notice of intent to forfeit was respondent's prior revocation. Respondent was ultimately charged with third-degree DWI as a result of this incident, with only respondent's alcohol concentration being used as an aggravating factor. On June 6, 2007, respondent filed a demand for judicial review of the forfeiture. On June 8, 2007, she also filed a PJR of her May 9, 2007 license revocation.

On July 30, 2007, respondent pleaded guilty to both the fourth- and third-degree DWI charges stemming, respectively, from the March 7, 2007 and May 9, 2007 arrests. She was sentenced on September 10, 2007. On September 17, 2007, respondent's counsel withdrew the pending PJRs. On January 14, 2008, a trial was commenced on respondent's demand for judicial determination of forfeiture.

On February 3, 2008, the district court issued an order denying forfeiture and instructing that respondent's car be returned to her. It concluded that:

1. The right to due process requires that the use of prior administrative license revocations to enhance criminal charges be limited to situations where judicial review is completed or has been waived by the failure to timely petition for review.

2. The above limitation upon the use of administrative license revocations for the enhancement of criminal charges applies to the use of such revocations in civil forfeiture proceedings because of the substantial interests of the individual.

3. Because [respondent] sought judicial review by filing a timely petition for review and the review had not been completed at the time of the May 9, 2007 incident and subsequent attempted forfeiture of her vehicle, [respondent's] right to due process as to her license revocation had not been satisfied and the revocation from the March 7, 2007 incident may not be used against her.

4. Without the prior license revocation [respondent's] vehicle is not subject to forfeiture.

The state argues that, under *State v. Wiltgen*, 737 N.W.2d 561 (Minn.2007), it was error for the district court to conclude that respondent's due-process rights would be violated by the use of prior administrative license revocations as an aggravating factor in a civil forfeiture proceeding when those revocations were once the subject of petitions for judicial review but where there was no judicial hearing on those petitions because of respondent's voluntary decision to withdraw them prior to the commencement of the trial on the forfeiture action. This is an issue of first impression before this court.

## ISSUE

May a prior administrative license revocation be used as an aggravating factor to subject a vehicle to forfeiture pursuant to Minn.Stat. § 169A.63, subd. 6, without violating due process when that revocation was once the subject of a petition for judicial review but where there was no judicial hearing on the petition because of the petitioner's voluntary decision to withdraw it prior to the commencement of the trial on the forfeiture action?

## ANALYSIS

*1. Statutory framework.*

Under Minnesota's Impaired Driving Code, an individual's vehicle is subject to forfeiture under certain circumstances. Minn.Stat. §§ 169A.01–.78 (2008). A motor vehicle is subject to forfeiture if it was used in the commission of certain designated offenses. Minn.Stat. § 169A.63, subd. 6. Second-degree DWI in violation of Minn.Stat. § 169A.25 is one such designated offense. Minn.Stat. § 169A.63, subd. 1(e)(1).

Second-degree DWI is defined in Minn. Stat. § 169A.25. It provides that a person who drives a motor vehicle while impaired in violation of Minn.Stat. § 169A.20, subd. 1 is guilty of second-degree DWI if "two or more aggravating factors were present when the violation was committed." Minn. Stat. § 169A.25, subd. 1(a). Driving while impaired is addressed by Minn.Stat. § 169A.20, subd. 1. Under this subdivision it is a crime for any person to operate a motor vehicle within the state when that "person is under the influence of alcohol," or when that "person's alcohol concentration at the time, or as measured within two hours of the time, of driving, operating, or being in physical control of the motor vehicle is 0.08 or more." *Id.* Aggravating factors include: "a qualified prior impaired driving incident within the ten years immediately preceding the current offense," and "having an alcohol concentration of 0.20 or more as measured at the time, or within two hours of the time, of the offense." Minn.Stat. § 169A.03, subd. 3(1), (2).

A "qualified prior impaired driving incident" (QPIDI) includes "prior impaired driving convictions" and "prior impaired driving-related losses of license." *Id.*, subd. 22. QPIDI's include "driver's license suspension, revocation, cancellation, denial, or disqualification" under the implied-consent law. *Id.*, subd. 21; *see also* Minn.Stat. §§ 169A.50–.53 (outlining implied-consent law).

When determining the number of aggravating factors present for purposes of the Minnesota Impaired Driving Code, "each qualified prior impaired driving incident within the ten years immediately preceding the current offense is counted as a separate aggravating factor." Minn.Stat. § 169A.095.

*2. Wiltgen.*

The district court, the state, and respondent rely heavily on the Minnesota Supreme Court's decision in *Wiltgen* to reach their respective conclusions.

That case addressed the question of

whether an administrative license revocation, which did not receive a prompt postrevocation judicial review *because of an automatic stay pending the prosecution of the associated criminal charge,* can constitutionally be used as an aggravating factor to support the enhancement of a subsequent driving while impaired (DWI) charge from third-degree to second-degree.

*Wiltgen,* 737 N.W.2d at 564 (emphasis added).

The appellant in *Wiltgen* was arrested on August 13, 2005 for DWI. *Id.* at 565. Following her arrest, Wiltgen's driver's license was administratively revoked under Minnesota's implied-consent law, and she was charged with third-degree DWI. *Id.* She challenged the revocation by timely filing a PJR pursuant to Minn.Stat. § 169A.53, subd. 2. *Id.* Despite Minn.Stat. § 169A.53, subd. 3's requirement that a hearing be held on the license revocation "at the earliest practicable date, and in any event no later than 60 days following the filing of the petition for review," a district court standing order provided that the "hearing date will be scheduled upon disposition of the associated criminal case." *Id.* (quotation marks omitted). The supreme court noted that the effect of this order in Wiltgen's case was "to eliminate the 60–day hearing requirement on her August 2005 license revocation because Wiltgen's associated criminal case had not been disposed of" within 60 days of the filing of her PJR. *Id.* Because the standing order prevented the scheduling of a hearing on Wiltgen's petition, she requested a stay of the balance of the revocation. *Id.* The district court granted this stay on August 30, 2005. *Id.*

On September 13, 2005, Wiltgen was again arrested for DWI. *Id.* She was charged with second-degree DWI. *Id.* Her August 2005 DWI license revocation was used as an aggravating factor in her second-degree DWI charge. *Id.* at 565–66. At trial, Wiltgen argued that the state could not constitutionally charge her with second-degree DWI by using an unreviewed license revocation as one of the aggravating factors. *Id.* at 566. The state argued that because the August 2005 license revocation was stayed, rather than rescinded, it was proper to use the stay as an aggravating factor for the September 2005 charge. *Id.*

The supreme court began its analysis by noting that Wiltgen "did not procure the Standing Order" and that it was the standing order "that made it impossible for Wiltgen to obtain an implied-consent hearing within 60 days after filing her petition for judicial review." *Id.* at 567.[1] Next, the court moved on to discuss whether

the use of an unreviewed prior license revocation at the trial of a subsequent DWI charge, to establish an aggravating factor that enhances that DWI charge, would violate [Wiltgen's] right to due process where she has requested judicial review of the revocation and judicial review of the revocation has not yet been promptly provided *because of the Standing Order.*

*Id.* at 568 (emphasis added). The court then applied the *Mathews* three-part test to resolve this issue, considering: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

The court, noting that "freedom from physical restraint has always been at the core of the liberty protected by the Due Process Clause," determined that the private interest affected was Wiltgen's liberty

---

1. The court noted that Wiltgen's request to stay the balance of her revocation period was not a waiver of her right to an implied-consent hearing; instead, the court said it "should be seen as an action taken to mitigate the prejudice caused by the Standing Order." *Id.*

interest. *Wiltgen*, 737 N.W.2d at 569 (quotation omitted). This was the case because the use of the August 2005 revocation as an aggravating factor for the charge stemming from the September 2005 arrest could increase Wiltgen's jail time by up to 60 days. *Id.*

Next the court analyzed the risk of an erroneous deprivation of the private interest involved. It concluded that "[u]sing a license revocation as a conclusive element of a crime when judicial review has been requested but has not yet occurred greatly increases the risk of an erroneous deprivation." *Id.* The court explained that, "[i]n Wiltgen's case, there remains an opportunity for meaningful review of the administrative license revocation in the implied consent proceeding, but until that review has been provided, ... due process concerns arise from the use of the revocation to establish an element of a criminal offense." *Id.* at 570 (quotation marks omitted).

Addressing the government interest, the court concluded that "[t]he state has a compelling interest in highway safety that justifies its efforts to keep impaired drivers off the road, particularly those drivers who have shown a repeated willingness to drive while impaired." *Id.* The *Wiltgen* court also "again emphasize[d]" that "drunken drivers pose a severe threat to the health and safety of the citizens of Minnesota." *Id.* (quotation omitted).

Applying these three factors to Wiltgen's case, the Minnesota Supreme Court held that using a prior unreviewed license revocation as a conclusive element of a crime in a subsequent DWI prosecution violates due process:

> Although we appreciate the important nature of the government interest, we conclude that Wiltgen's interest in her liberty, combined with the risk of erroneous deprivation, outweighs the state's

interest in providing enhanced penalties for repeat offenders, pending resolution of the implied-consent proceeding. We hold that the potential prejudice suffered by Wiltgen from the use of an unreviewed administrative revocation to enhance a subsequent DWI rises to the level of a violation of her right to procedural due process.

*Id.*

Because the court concluded that using the unreviewed August 2005 revocation would violate due process, it also held that "evidence of the August 2005 unreviewed revocation would not be admissible at trial and thus cannot be considered to support probable cause in a motion made under Rule 11.03." *Id.* at 572. In a footnote to this statement, the court noted:

> This result does not seriously prejudice the state because the state can delay the issuance of a second-degree DWI complaint until after the implied-consent hearing has been conducted and the revocation has been sustained, or can charge third-degree DWI before the implied consent hearing and amend the complaint to add a second-degree DWI charge after the hearing.

*Id.*

### 3. The district court's reasoning.

The district court first noted that the meaning of due process is clear: "Parties whose rights are to be affected are entitled to be heard ... It is equally fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner." It next summarized our supreme court's analysis in *Wiltgen*. Finally, it went on to apply that analysis to the facts of the present case.

The district court began with a discussion of the private interest. It noted that this case was distinct from *Wiltgen* in that *Wiltgen* involved the deprivation of an individual's liberty interest, whereas this case involves the deprivation of an individual's property interest. It concluded that "though [respondent's] property interest may not be as significant as a liberty interest, property interests are still entitled to protection and can be substantial." The district court went on to explain that "[c]itizens, particularly those residing in rural areas, have a significant interest in ownership of their vehicle(s) because privately owned vehicles are often the only means of transportation and the permanent loss of a vehicle would have a significant adverse impact upon an individual[ ]." It found that "[t]he significant need for a motor vehicle means that due process is satisfied by a judicial review hearing, when requested."

Addressing the second *Mathews* factor, the district court determined that the risk of erroneous deprivation was "substantial" because there had not yet been judicial review of the first revocation. It explained that, because the prior revocation would be used as conclusive evidence necessary to establish that the vehicle is subject to forfeiture, "[p]ermitting the unreviewed license revocation to be used to establish a designated offense for the purpose of forfeiture implicates serious due process concerns."

Finally, the district court concluded that the government's interest was the state's "compelling interest in highway safety." It acknowledged that "the state is seeking to serve public safety by taking away [respondent's] vehicle."

Applying the three *Mathews* factors, the district court stated that "[a]lthough the state's interest in deterring impaired drivers is great, [respondent's] property interest combined with the risk of erroneous deprivation outweighs the state's interest in seizing the vehicles of persons with multiple impaired driving-related offenses."

The district court reasoned that the "mere availability of judicial review is sufficient to satisfy due process *only* if review occurred or if the driver did not exercise the right to judicial review." It reasoned that the fact that respondent could have had an earlier hearing does not alter the due-process analysis. What was important was that respondent had not explicitly waived or failed to assert the right to judicial review at the time she received the forfeiture notice.[2] The district court, quoting this court's unpublished decision in *State v. Darnell*, No. A07–1289, 2007 WL 4305441 (Minn.App. Dec.11, 2007), *review denied* (Minn. Feb. 19, 2008), explained that it read "the *Wiltgen* holding as 'limit[ing] the use of prior license revocations to situations where judicial review is completed or has been waived by the failure to timely petition for review.' "[3]

In sum, the district court recognized that this case presented a "close call" but held that respondent's right to due process had not been satisfied because "[a]t the time of the attempted forfeiture, judicial review of her prior license revocation was still pending" and "had not been waived."

---

2. The district court noted that respondent's "attorney had requested a continuance and the implied consent hearing had been reset, but was still pending" when she received the forfeiture notice during the second stop.

3. The court in *Darnell* made this statement in the context of a criminal case. It did not discuss how the holding in *Wiltgen* might apply to a civil forfeiture case. Further, unpublished cases by this court are not precedential. Minn.Stat. § 480A.08, subd. 3 (2008).

*4. A prior administrative license revocation may be used as an aggravating factor to subject a vehicle to forfeiture pursuant to Minn.Stat. § 169A.63, subd. 6 without violating due process when that revocation was once the subject of a petition for judicial review but where there was no judicial hearing because of the petitioner's voluntary decision to withdraw the petition prior to the forfeiture trial's commencement.*

■ "An appellate court is not bound by, and need not give deference to, the district court's decision on a question of law." *Bondy v. Allen,* 635 N.W.2d 244, 249 (Minn.App.2001) (citing *Frost–Benco Elec. Ass'n v. Minn. Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984)). Thus, our standard of review is de novo.

We begin our analysis by discussing how the statutory framework discussed above applies to the facts in this case. Next, we consider the district court's reasoning that the "mere availability of judicial review is sufficient to satisfy due process *only* if review occurred or if the driver did not exercise the right to judicial review." Finally, we apply the *Mathews* balancing test to the facts of this case.

Under the express statutory language, respondent's vehicle should be forfeited as a result of her second DWI arrest. On March 7, 2007, respondent operated a motor vehicle within the state when her alcohol concentration was 0.16. She was arrested, and her license was revoked pursuant to the implied-consent law. *See* Minn.Stat. §§ 169A.50–.53 (implied-consent law). The revocation of her license on that date is a QPIDI that acts as an aggravating factor for the next ten years in future driving-while-intoxicated actions. Minn.Stat. § 169A.03, subds. 3, 22. On May 9, 2007, respondent again violated the Minnesota Impaired Driving Code by operating a motor vehicle within the state when her alcohol concentration was 0.26. This conduct constituted second-degree DWI because two aggravating factors were present "when the violation was committed." Minn.Stat. § 169A.25, subd. 1(a) (defining second-degree DWI). The first aggravating factor was respondent's QPIDI related loss of license on March 7, 2007. Minn.Stat. § 169A.03, subd. 3(1). The second aggravating factor was respondent's alcohol concentration of 0.26 during her second arrest. *Id.,* subd. 3(2). Violations of Minn.Stat. § 169A.25 are designated offenses that allow for a vehicle's forfeiture. Minn.Stat. § 169A.63, subds. 1(e), 6. Thus, under the statutory framework, respondent's car should have been subject to forfeiture.

The district court reasoned that the "mere availability of judicial review is sufficient to satisfy due process *only* if review occurred or if the driver did not exercise the right to judicial review." We disagree. Under the district court's analysis, a person accused of drunk driving may file a PJR, waive the 60–day requirement, and then prevent that revocation from ever being used against him or her by withdrawing the PJR prior to the forfeiture trial but after the 60–day window has expired. This would lead to an absurd result that is contrary to the statutory framework. Minn.Stat. § 645.17 (2008) (stating that, when ascertaining legislative intent, courts may presume that the legislature does not intend results that are absurd). *Wiltgen* turned on the fact that the district court's *standing order* prevented the PJR hearing from being held within 60 days. By contrast, here it was respondent's *own decision* to first waive the 60–day hearing requirement and then withdraw the PJR that prevented the PJR hearing from being held within 60 days. To give someone the benefit of preventing a revocation from

being used against them in a future civil forfeiture hearing because of their own actions is against the intent of this state's DWI laws, which are focused on protecting the public from the extreme hazards posed by those who choose to continuously operate vehicles while intoxicated.

Finally, we apply the *Mathews* balancing test. First, we agree with the district court that the private interest at stake here is respondent's property interest in her car. But we conclude that the district court placed disproportionate weight on an individual's property interest in a car as compared with the risk of erroneous deprivation and the government's compelling interest in protecting its citizens from drunk drivers.

Second, the risk of erroneous deprivation in this case was minimal. As the state points out, this court held in *State v. Polsfuss*, 720 N.W.2d 1, 4 (Minn.App.2006), that

> the due-process guarantees in a civil implied-consent proceeding are different from the due-process guarantees in a criminal proceeding. A driver's license is an important property interest and is subject to due-process protections. *Kleven v. Comm'r of Pub. Safety*, 399 N.W.2d 153, 156 (Minn.App.1987). In this context, due process requires a hearing before a person may be deprived of a driver's license. *Heddan v. Dirkswager*, 336 N.W.2d 54, 59 (Minn. 1983). This requirement is satisfied by "the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* In the criminal context, due process mandates that criminal defendants be treated with fundamental fairness. *State v. Richards*, 495 N.W.2d 187, 191 (Minn.1992).

Here, respondent had the opportunity for a hearing on her driver's license revocation. She waived this hearing voluntarily by withdrawing the PJR, unlike the driver in *Wiltgen* whose hearing was delayed against her wishes by a district court's standing order. It was not until after respondent's request for a hearing had been voluntarily withdrawn that the state proceeded with forfeiture proceedings, a step arguably contemplated by the supreme court in footnote seven of *Wiltgen*. Further, respondent's choice to forgo a hearing indicates that the chance that the revocation was erroneous was not substantial.

Third, we agree with the district court and the supreme court in *Wiltgen* that protecting citizens from the hazards posed by impaired drivers is a compelling governmental interest.

■ While we acknowledge the difficulty the district court faced in resolving this novel issue, and commend its expressed desire to abide by the precedent set by *Wiltgen*, we conclude that the district court erred in holding that due process is violated when a prior administrative license revocation is used as an aggravating factor to subject a vehicle to forfeiture pursuant to Minn.Stat. § 169A.63, subd. 6 when that revocation was once the subject of a petition for judicial review but is no longer because the petitioner voluntarily withdrew the petition prior to the commencement of the trial of the forfeiture action. Accordingly, this case is reversed and remanded for trial.

Because the state's appeal was not frivolous, and because respondent's motion for sanctions did not comply with Minn.Stat. § 549.211, subd. 4(a) (2008)'s 21–day safe harbor provision, respondent's motion for attorney fees is denied. Because the interests of justice do not warrant an award of attorney fees to the state, its motion for attorney fees is also denied.

## DECISION

Because due process is not violated when a prior administrative license revocation is used as an aggravating factor to subject a vehicle to forfeiture pursuant to Minn.Stat. § 169A.63, subd. 6, when that revocation was once the subject of a petition for judicial review but there was no judicial hearing because the petitioner voluntarily withdrew the petition prior to commencement of the forfeiture trial, the district court erred in concluding that respondent's vehicle is not subject to forfeiture.

**Reversed and remanded.**