BRATVOLD, Judge
Appellant Steven Jeffrey Anderson challenges his judgment of conviction of second-degree driving while impaired (DWI), under Minn. Stat. § 169A.25, subd. 1(b) (2016), which required the state to prove one aggravating factor in addition to proving that Anderson refused to submit to chemical testing under Minn. Stat. § 169A.20, subd. 2 (2016). Anderson argues that his DWI conviction must be overturned for two reasons. First, Anderson contends that the district court erred in denying his probable-cause challenge to the complaint because his prior license revocation does not satisfy the aggravating-factor element for second-degree DWI. He argues the relevant DWI statute requires that, to be used as an aggravating factor, his prior license revocation must be "present" at the time that the current DWI "violation was committed." Minn. Stat. § 169A.25, subd. 1(b). Second, Anderson argues that his prior license revocation was not present because his revocation was pending judicial review at the time he committed the DWI violation, therefore, his due-process rights were violated.
We conclude that Anderson's prior license revocation was effective at the time the commissioner notified him of the revocation in October 2016, and, therefore, the prior license revocation was present at the time of his DWI offense. And because Anderson had an opportunity for judicial review of his prior license revocation before the state served him with the DWI complaint, Anderson's due-process rights were not violated. Thus, we affirm.
FACTS
Law enforcement arrested Anderson for DWI on two separate dates in late 2016. The first arrest occurred on October 2, *643 2016 (2016 license revocation). About a week after the arrest, the commissioner of public safety notified Anderson that it had administratively revoked his license under Minnesota's implied-consent law for one year. No criminal charges resulted from this arrest. Anderson timely filed a petition for judicial review of the 2016 license revocation. In April 2017, Anderson waived his right to further judicial review of the 2016 license revocation at a hearing and the district court sustained the revocation.
The second arrest occurred on Sunday, December 18, 2016 (2016 DWI). Two officers in a marked squad car were on patrol on Restwood Road in the City of Lexington when a male flagged them down and informed them that Anderson "was drunk and about to leave" a bar in the area. The male described Anderson's car as a silver Mercedes and told the officers where the car was parked. The officers found the Mercedes, checked its license plate, and learned that its registered owner was Anderson, who had a limited license that prohibited him from driving on Sundays.
The officers parked under a streetlight outside the bar and soon observed a man exit the bar and enter the Mercedes. When the Mercedes drove past them, one of the officers noted that the front windows were "almost completely black" and he "could not see into the cabin at all." Based on his experience, the officer believed that the front windows were illegally tinted. After following the vehicle, the officer also noticed that Anderson's rear license plate lights were "very dim." The officers activated their emergency lights to initiate a traffic stop, and the Mercedes "stop[ped] in the middle of the road" before pulling over to the shoulder.
The officers approached the Mercedes, identified Anderson, and noted that he had "bloodshot, watery" eyes and a strong odor of alcohol on his breath. The officers informed Anderson that he was violating the terms of his limited license. Anderson initially denied "drinking anything" but later admitted that he had "a few beers." The officers asked Anderson to perform field sobriety tests, which he agreed to and performed poorly. The officers then administered a preliminary breath test, but Anderson failed to provide a proper sample.
The officers arrested Anderson, transported him to the Centennial Lakes Police Department, and read him the implied-consent advisory. After making a phone call, Anderson agreed to take a breath test, but blew "around the mouthpiece" and otherwise prevented officers from obtaining a proper sample, which the officers deemed to be a refusal. Anderson's license "was again revoked-this time for two years."
The state did not charge Anderson until August 7, 2017-about four months after he waived judicial review. The state served Anderson with a complaint that had two DWI counts: count one was for second-degree DWI (test refusal) under Minn. Stat. § 169A.25, subd. 1(b), and count two was for third-degree DWI (operating motor vehicle while impaired) under Minn. Stat. § 169A.26, subd. 1(a) (2016).[1] Each count alleged as the aggravating factor Anderson's 2016 license revocation.
Anderson moved to dismiss counts one and two, arguing that the state lacked probable cause because there was "insufficient evidence" to prove enhancement of *644 the offense. Anderson also contended that the state had violated his due-process rights by using the 2016 license revocation as an aggravating factor to support the 2016 DWI charges. The state opposed the motion.
After a contested omnibus hearing, the district court denied Anderson's motion to dismiss. The state and Anderson then agreed to stipulate to evidence for a court trial, while maintaining Anderson's not-guilty plea to preserve the pretrial issue for appellate review under Minn. R. Crim. P. 26.01, subd. 4. The parties agreed that the pretrial issue of whether the 2016 license revocation could be used as an aggravating factor for the 2016 DWI was dispositive of Anderson's case.
The district court found Anderson guilty of second- and third-degree DWI. In July 2018, the district court sentenced Anderson on count one (second-degree test refusal) to 365 days in jail, with 335 days stayed for six years. No sentence was imposed on count two. Anderson appeals.[2]
ISSUE
Was Anderson's 2016 license revocation "present" at the time he committed the 2016 DWI and, therefore, sufficient to sustain his conviction for second-degree DWI?
ANALYSIS
I. Anderson's 2016 license revocation was "present" as an aggravating factor at the time he committed the 2016 DWI.
At the outset, we clarify the issue on appeal. Anderson frames his argument as a challenge to the district court's pretrial ruling on probable cause based on the language of the DWI statute. A conviction of second-degree DWI requires the state to prove that a defendant refused to submit to a chemical test and that "one aggravating factor was present when the violation was committed." Minn. Stat. § 169A.25, subd. 1(b). The district court denied Anderson's probable-cause challenge and framed the issue as "whether the revocation needs to be reviewed at the time of the offense to be used as an aggravating factor or whether the State has authority to delay charging and wait[ ] until there is a qualified impaired driving record." We agree with the district court's framing of the issue because Anderson disputes whether his 2016 license revocation was "present" when he committed his 2016 DWI.[3] When a district court dismisses a probable-cause challenge based on its assessment of the elements of an offense, statutory construction, or another legal issue, this raises a question of law for appeal. See State v. Tice , 686 N.W.2d 351, 353 (Minn. App. 2004), review denied (Minn. Nov. 16, 2004).
Anderson makes two arguments. First, he contends that a prior license revocation must be judicially reviewed, or the driver have the opportunity for such review, before it is "present" as an aggravating factor for any subsequent DWI. Second, he asserts that the state violated his due-process rights when it used the 2016 license revocation as an aggravating factor.
*645 We address each of Anderson's arguments in turn.
A. A prior license revocation is "present" as an aggravating factor to enhance a subsequent DWI offense after a driver receives notice of the prior license revocation.
Applying a statute to undisputed facts is a question of law that this court reviews de novo. State v. Lopez , 778 N.W.2d 700, 705 (Minn. 2010). This court also reviews matters of statutory interpretation de novo. Id. When interpreting statutes, this court's role is to "ascertain and effectuate the intention of the legislature." State v. Rogers , 925 N.W.2d 1, 3 (Minn. 2019) (quoting Minn. Stat. § 645.16 (2018) ). The first step in ascertaining the legislature's intent is to "determine whether the statutory language is ambiguous." Id. "A statute is ambiguous when it is susceptible to more than one reasonable interpretation." Id. (quotation omitted). If a statute is unambiguous, this court will "enforce the plain meaning of the statute and not explore the spirit or purpose of the law." Dupey v. State , 868 N.W.2d 36, 39 (Minn. 2015).
To determine whether Anderson's 2016 license revocation was present as an aggravating factor when the 2016 DWI was committed, we consider when a license revocation is effective. Chapter 169A provides that a license revocation "becomes effective at the time the commissioner or a peace officer acting on behalf of the commissioner notifies the person of the intention to revoke ... and of revocation." Minn. Stat. § 169A.52, subd. 6 (2018). A person who receives a notice of license revocation may petition for judicial review "[w]ithin 60 days" of receiving notice. Minn. Stat. § 169A.53, subd. 2(a) (2018). But chapter 169A expressly provides that filing a petition for judicial review "does not stay" the license revocation. Id. , subd. 2(c) (2018).
We conclude that, according to the plain language of section 169A.52, subdivision 6, Anderson's 2016 license revocation was effective as soon as the commissioner provided him with notice of the revocation. It is undisputed that Anderson's license was revoked for one year on October 9, 2016, and that he received notice of the revocation. See Minn. Stat. § 169A.52, subd. 6. Consequently, Anderson's 2016 license revocation was "present" when he committed the 2016 DWI because the license revocation had been effective since October 2016. The fact that Anderson filed a timely petition for judicial review, which was pending at the time he committed the 2016 DWI, did not affect whether his 2016 license revocation was present because his revocation was not stayed by his subsequent petition for judicial review. See Minn. Stat. § 169A.53, subd. 2(c).
Anderson contends that State v. Wiltgen has already construed the relevant language in the DWI statutes to require that "judicial review be completed before a license revocation under the implied-consent law may be used as an aggravating factor in a subsequent DWI prosecution." 737 N.W.2d 561, 571 (Minn. 2007) (discussing Minn. Stat. § 169A.03, subd. 21 (2006) ). After a careful review of the supreme court's statutory analysis in Wiltgen , we reject Anderson's interpretation.
The issue decided in Wiltgen was whether the DWI statutes were unconstitutional because they violated due process by allowing a person to be criminally sanctioned with enhanced penalties based on a prior license revocation that had not received judicial review. Id. at 570-71. The supreme court's analysis focused on the definitions that are used in Minnesota's DWI statutes. Id. Section 169A.03, subdivision 3, defines *646 an "[a]ggravating factor" to include a "qualified prior impaired driving incident within the ten years immediately preceding the current offense." Minn. Stat. § 169A.03, subd. 3(1) (2018). Subdivision 22 defines a "[q]ualified prior impaired driving incident" to include "prior impaired driving-related losses of license" under subdivision 21. Minn. Stat. § 169A.03, subd. 22 (2018). The supreme court in Wiltgen reasoned that the legislature referred to Minnesota's implied-consent law in defining a "prior impaired driving-related loss of license"; therefore, subdivision 22 "evidenced an intent to limit the use of a license revocation, as an aggravating factor, to a situation where judicial review has already occurred or been waived by the failure to file a timely petition." Wiltgen , 737 N.W.2d at 571. Based on this analysis, the supreme court stated that it "read" the statutory definition of a prior impaired driving-related loss of license to "require that judicial review be completed" before the state can use a license revocation as an aggravating factor in a subsequent DWI prosecution. Id.[4]
But the supreme court's due-process analysis in Wiltgen did not alter the elements of an enhanced DWI offense. In fact, this court has held that Wiltgen 's due-process ruling only modified criminal procedure and "did not affect the scope of conduct that the criminal law-making authority may proscribe." See Odegard v. State , 767 N.W.2d 472, 476-77 (Minn. App. 2009) (holding that Wiltgen established a new rule of constitutional criminal procedure and was subject to the general rule barring retroactive application).
Because we conclude that section 169A.52, subdivision 6, unambiguously provides that a license revocation is effective when a driver receives notice of the revocation, we need do nothing more "to ascertain legislative intent." Dupey , 868 N.W.2d at 40. Even so, we observe that the legislative history supports our view that a license revocation is effective upon notice of revocation. A prior version of the implied-consent statute stated that "[n]o revocation ... is effective" until the commissioner or a peace officer "notifies the person of the intention to revoke and of revocation and allows the person a 30 day period to request ... a hearing." Minn. Stat. § 169.123, subd. 5 (1980) (emphasis added). Additionally, the statute previously provided that "[i]f a request for hearing is filed, a revocation is not effective until a final judicial determination resulting in a decision adverse to the person." Id. (emphasis added). But the legislature removed this language in the 1982 session laws. See 1982 Minn. Laws ch. 423, § 9, at 295.
We have previously recognized that, after the legislature made these changes to the implied-consent statutes, "the opportunity for lengthy delay" in the effectiveness of the revocation "was removed." Omdahl v. Comm'r of Pub. Safety , 383 N.W.2d 720, 722-23 (Minn. App. 1986). Since 1982, the language of subdivision 6 has remained substantially the same and provides that the revocation is effective "at the time" of notification. Compare Minn. Stat. § 169A.52, subd. 6 (2018), with Minn. Stat. § 169.123, subd. 5 (1982). Therefore, although we do not rely on legislative history to determine the meaning of section 169A.52, subdivision 6, our review of the legislative history confirms *647 our understanding of the plain meaning of the statute. Thus, we hold that a prior license revocation is present as an aggravating factor to enhance a subsequent DWI offense after a driver receives notice of the revocation under Minn. Stat. § 169A.52, subd. 6.
B. The state did not violate Anderson's right to due process because it delayed serving a complaint for the 2016 DWI until after Anderson had the opportunity for judicial review of the 2016 license revocation.
Anderson argues that he was not afforded due process because the state used the 2016 license revocation as an aggravating factor, even though it was unreviewed at the time he committed the 2016 DWI. The state argues that Anderson received due process because he filed a petition for judicial review of the 2016 license revocation, and the state delayed service of a complaint for the 2016 DWI until after Anderson had waived review of his petition. This court reviews de novo a constitutional question involving the application of law to undisputed facts. Wiltgen , 737 N.W.2d at 566.
The United States and Minnesota Constitutions guarantee due process of law for criminal defendants. U.S. Const. amend. XIV, § 1 ; Minn. Const. art. I, § 7. Due process requires an "opportunity to be heard at a meaningful time and in a meaningful manner." State v. Krause , 817 N.W.2d 136, 145 (Minn. 2012) (quoting Mathews v. Eldridge , 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L.Ed.2d 18 (1976) ) (other quotation omitted). The United States Supreme Court has held that when an administrative proceeding, such as a license revocation, plays a "critical role" in imposing a subsequent criminal sanction, "there must be some meaningful review of the administrative proceeding." United States v. Mendoza-Lopez , 481 U.S. 828, 837-38, 107 S. Ct. 2148, 2155, 95 L.Ed.2d 772 (1987). Accordingly, some "means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense." Id. at 481 U.S. at 838, 107 S. Ct. at 2155. Due process does not require actual review before a court, and only requires that the review be "made available." See id. ; see also State v. Coleman , 661 N.W.2d 296, 301 (Minn. App. 2003) (holding that the opportunity for meaningful judicial review is sufficient to satisfy due process), review denied (Minn. Aug. 5, 2003).
Minnesota law provides a driver with the right to file a petition for judicial review of an administrative license revocation "[w]ithin 60 days of receiving" a notice of revocation. Minn. Stat. § 169A.53, subd. 2(a). The hearing before a district court judge must occur "no later than 60 days following the filing of the petition for review." Id. , subd. 3 (2018). Filing a petition "does not stay the revocation," but the district court "may order a stay of the balance of the revocation ... if the hearing has not been conducted within 60 days after filing of the petition upon terms the court deems proper." Id. , subd. 2(c). Within 14 days of the hearing, the district court must either rescind or sustain the revocation. Id. , subd. 3(e).
Anderson relies heavily on Wiltgen , where the Minnesota Supreme Court held that the state violates due process if it prosecutes a defendant for enhanced DWI charges and uses a prior license revocation as an aggravating factor before the defendant has completed judicial review of that license revocation. 737 N.W.2d at 570. We agree that Wiltgen provides useful guidance here, but disagree with Anderson's view of the opinion.
*648 In Wiltgen , the supreme court applied the three-part test established in Mathews v. Eldridge . Id. at 568-70 (citing Mathews , 424 U.S. at 335, 96 S. Ct. at 903 ). After weighing the Mathews factors, the supreme court determined that the combined private interest and risk of an erroneous deprivation outweighed the government interest. Id. The supreme court held that the potential prejudice to the defendant "from the use of an unreviewed administrative revocation to enhance a subsequent DWI rises to the level of a violation of [the defendant's] right to procedural due process." Id. at 570.
In footnote seven of Wiltgen , the supreme court considered whether the state was prejudiced by its ruling and determined that it was not. Id. at 572 n.7. The supreme court reasoned that, in future cases, the state "can delay the issuance of a second-degree DWI complaint until after the implied consent hearing has been conducted and the revocation has been sustained, or can charge third-degree DWI before the implied consent hearing and amend the complaint to add a second-degree DWI charge after the hearing."[5]
The state argues that it followed footnote seven and, therefore, no due-process violation occurred. Anderson argues that the supreme court's analysis in footnote seven was dicta and does not bind this court. But in Heino v. One 2003 Cadillac , we relied on footnote seven to determine whether the state may use a prior license revocation as an aggravating factor to subject a vehicle to forfeiture without violating due process. 762 N.W.2d 257, 258, 264 (Minn. App. 2009). We concluded that the state's decision to delay forfeiture proceedings until the defendant's withdrawal of her petition was "a step arguably contemplated by the supreme court in footnote seven of Wiltgen ." Id. at 264. This court concluded:
[D]ue process is not violated when a prior administrative license revocation is used as an aggravating factor to subject a vehicle to forfeiture ... when that revocation was once the subject of a petition for judicial review but there was no judicial hearing because the petitioner voluntarily withdrew the petition prior to commencement of the forfeiture trial ....
Id. at 265.
Like the defendant in Heino , Anderson filed, then waived review of, his petition for judicial review of his 2016 license revocation before the state served a complaint that asserted an aggravating factor for his 2016 DWI. Although Heino involved a defendant's property interest, and Anderson's due-process claim involves his liberty interest, the risk of an erroneous deprivation is slight for Anderson. See Heino , 762 N.W.2d at 264 (concluding that "the risk of erroneous deprivation in this case was minimal"). If Anderson had proceeded with judicial review of the 2016 license revocation and successfully obtained a rescission, then the state could not have used his revocation as an aggravating factor for his 2016 DWI.
And, like the defendant in Heino , Anderson had the opportunity for "some *649 meaningful review of the administrative proceeding" because Anderson waived judicial review of the 2016 license revocation before the state served its complaint for the 2016 DWI. See Mendoza-Lopez , 481 U.S. at 837-38, 107 S. Ct. at 2155. Additionally, the state's delay in serving the complaint for the 2016 DWI did not prejudice Anderson.[6] Finally, the Minnesota Supreme Court has long recognized that the public risks associated with drunk driving are significant, and that "[t]he compelling interest in highway safety justifies the State of Minnesota in making a revocation effective pending the outcome of the prompt post-[revocation] hearing." Heddan v. Dirkswager , 336 N.W.2d 54, 63 (Minn. 1983).[7] This being so, it follows that there would be a similarly strong-if not stronger-public interest in a license revocation remaining in force after the revocation is judicially upheld.
Based on Wiltgen and Heino , we conclude that the state did not violate Anderson's due-process rights because Anderson had the opportunity for judicial review of his 2016 license revocation and the state delayed service of the criminal complaint until after Anderson had waived judicial review and the revocation was sustained.
DECISION
We conclude that Anderson's prior license revocation was "present" as an aggravating factor under Minn. Stat. § 169A.25, subd. 1(b) at the time Anderson committed the 2016 DWI. Additionally, we conclude that the district court did not err in determining that Anderson's due-process rights were not violated when the state served Anderson with a criminal complaint for the 2016 DWI and used his 2016 license revocation as an aggravating factor.
Affirmed.

The state's complaint included a third count related to Anderson's violation of his limited license pursuant to Minn. Stat. § 171.30, subd. 4 (2016), and a fourth count related to the vehicle's illegally tinted windows pursuant to Minn. Stat. § 169.71, subd. 1 (2016). He was convicted of both offenses, and neither is at issue on appeal.

In his brief to this court, Anderson states that count two (third-degree DWI) "can remain as long as the state utilizes the refusal for enhancement only."

Anderson's issue is preserved for appeal under Minn. R. Crim. P. 26.01, subd. 4, because the district court's pretrial ruling, which it decided as a matter of law, made a contested trial unnecessary. See Minn. R. Crim. P. 26.01 cmt. (providing that rule 26.04, subdivision 4, applies to "a DWI case where the only issue is the validity of one or more qualified prior impaired driving incidents as a charge enhancement" because "a contested trial would serve no purpose."

In Wiltgen , the supreme court also considered whether a prior unreviewed license revocation could be used to support probable cause for enhanced DWI charges in a subsequent offense. Id. Because the supreme court concluded that the use of the unreviewed revocation at trial would violate due process, the court also held that an unreviewed license revocation cannot support probable cause for a subsequent DWI offense. Id. at 571-72.

Anderson also contends that footnote seven in Wiltgen is based on faulty reasoning because "the offense date, not the charge date, is controlling." We disagree. Before the state served Anderson with the enhanced DWI charges, the state had not taken any action that implicated Anderson's liberty interest because it had not yet used the 2016 license revocation as an aggravating factor to impose a criminal sanction. Our caselaw has consistently recognized that only government action implicates due-process rights or other protections under the state constitution. See State v. Wicklund , 589 N.W.2d 793, 801 (Minn. 1999) ("[T]he protections of our state constitution are triggered only by state action.").

We acknowledge that two limitations that restrict the state's ability to delay charging a DWI offense. First, Minn. Stat. § 628.26(k) (2018) provides that the state must properly serve and file a complaint "within three years after the commission of the offense." Here, the state served the complaint against Anderson about eight months after the 2016 DWI. Second, precharge delay of a complaint can, in some circumstances, violate due process when the state abuses its power to impede a defendant's ability to mount an effective defense or to gain a tactical advantage. See United States v. Marion , 404 U.S. 307, 325, 92 S. Ct. 455, 466, 30 L.Ed.2d 468 (1971). Anderson does not contend that the state violated his due-process rights by precharge delay in order to impair his defense.

Although Heddan has been superseded by statute, its analysis of the government's interest remains valid. Heddan upheld the prehearing license revocation provisions under Minn. Stat. § 169.123 (1982), which provided for immediate availability of a limited license. Heddan , 336 N.W.2d at 60. After Heddan , the legislature amended the statutory framework in 1992 to eliminate immediate availability of a limited license. See Hamilton v. Comm'r of Pub. Safety , 600 N.W.2d 720, 723-24 (Minn. 1999) (holding that lack of "the immediate availability of a limited license" does not violate due process).